Nichols, Judge,
delivered the opinion of the court:
Plaintiff sues here for back pay, as an Internal Bevenue agent, alleging wrongful removal. He is a lawyer and accountant, and had been a career employee for several years. He was stationed at Miami, Florida. On February 1, 1968, plaintiff was advised by letter of his proposed removal in order to promote the efficiency of the Service. Three charges were made and a brief summary follows:
Charge I. Furnishing False Information on Official Documents. Seventeen separate specifications were included in the *534 charge, sixteen of which alleged plaintiff’s having reported on oficial sign-out sheets and time reports his presence at a field work assignment auditing a taxpayer’s books at times he was not there. Specification 16 will suffice as an example:
Specification 16: Sign-Out Sheet, RC-SE Form 23-A, shows that on July 7,1967, you were at Kovens Construction Company from 8:10 a.m. until 4:45 p.m. Also, you reported on Audit Technical Time Eeport, Form 2493, that on July 7,1967, you spent 8 hours direct examination time on Euedd, Inc., a closely held corporation of Mr. Kovens.
You were not at Kovens Construction Company from 8:10 a.m. until 4:45 p.m., and you did not spend 8 hours examination time on Euedd, Inc. Investigation reveals that you left your residence at 8:48 a.m., arrived at Kovens Construction Company at 9:11 a.m., and left there at 4:05 p.m.
The charge went on to recite that while the group secretary was authorized to sign agents in and out at their request, each agent was responsible for the accuracy of the entries on the sign-out sheets pertaining to his whereabouts.
Specification 17 charged plaintiff with falsifying travel vouchers during the same time period by claiming compensable mileage in his personally owned automobile, and parking fees, not consonant with his actual mileage and the parking fees he had to pay, as investigation established.
The charge then indicated the actions alleged in the 17 specifications were in violation of Section 1942.55 of the Eules of Conduct for Internal Eevenue Service Employees (Eev. 10-63) which provides:
1942.55 False Statements
Proper functioning of the Eevenue Service requires that the Service, the courts, other Federal agencies and the public be able to rely implicitly on the truthfulness of Eevenue Service employees in matters of official interest. An employee may be subjected to severe disciplinary action and prosecution for intentionally making false or misleading verbal or written statements in masters of official interest. Some of these matters * * * are: transactions with taxpayers, other Federal agencies or fellow employees; entries on tax returns, work reports *535 of any nature or accounts of any kind; vouchers, leave requests, application forms SF-57, and other forms which serve as a basis for appointment, reassignment, promotion, or other personnel actions; * * * (Emphasis supplied).
Charge II. Failure to Work the Required Tour of Duty. The specification supporting this charge noted that the official duty hours of the group were 8 a.m. to 4:45 p.m. daily and that specifications 1-16 of Charge I indicated that plaintiff had not observed these duty hours. Such failure was alleged to be in violation of Section 1942.54 of the Rules of Conduct, which provided for “disciplinary action including separation” in cases of recurring or continued unauthorized absence.
Charge III. Failure to Follow Supervisor’s Instructions. The three specifications of this charge rely on the specifications of Charge I in that plaintiff failed to work his full tour of duty as directed by his section chief by failing to return to the office when he had not worked his full shift at a taxpayer’s place of business.
Plaintiff sought and delivered an oral reply, submitting a lengthy affidavit denying all charges and specifications, alleging mitigating circumstances, and setting forth bases of defense. In essence, he responded that (1) he had not intentionally falsified travel vouchers or sign-out sheets, (2) he acted within the discretion normally accorded a professional employee, (3) there were mitigating circumstances, and (4) management had interfered with his defense. A decision adverse to plaintiff was appealed to the Regional Commissioner of Internal Revenue, with emphasis that no deliberate falsification had occurred, but he affirmed.
On December 2, 1968, plaintiff appealed to the Atlanta Regional Office of the Civil Service Commission, which found that the evidence supported all charges and denied plaintiff’s appeal. On plaintiff’s appeal to the Board of Appeals and Review of the Civil Service Commission (BAR), the Board, in upholding the removal, stated:
* * * the appellant contends that the charges in this case are of a petty nature, considering that a professional *536 employee is involved, and that tlie penalty of removal is too 'harsh. The Board does not agree that the charges in ¡this case were petty. Considering the nature of the appellant’s duties and responsibilities, the Internal Eevenue Service had a right to expeot a high degree of honesty and integrity and it had a right to expeot the appellant to follow his supervisor’s instructions, and to work the required tour of duty. Having fully considered the appellate record and all representations submitted by and in behalf of the appellant, the Board finds that ¡based on the sustained charges, the agency’s action in removing the appellant was not unreasonable, arbitrary or capricious, but was for such cause as will promote the efficiency of the service.
Plaintiff, in his motion for summary judgment here, repeats and relies upon his argument that the penalty of removal is too harsh in 'light of the nature of the charges. Were the charges confined to plaintiff’s poor attendance record, we might be inclined to agree. But there are more: false statements as to his whereabouts during duty hours in spite of specific directions from his supervisor covering this very situation, and also as to his mileage in his private car.
On February 6, 1967, plaintiff’s supervisor addressed a memorandum to plaintiff, reading in pertinent part:
It is essential that each of us observe the duty hours and each of us is responsible for being punctual in reporting for work.
Also, you are requested to exercise care in using the Sign-in, Sign-out Sheet, Form BO SE 2,3-A. When you are away from the office your Whereabouts should be indicated by you on the sign-in, sign-out sheet.
This memorandum is prepared to record the discussion of the above two subj ects with you today.
In a memo addressed to the group and dated March 2, 1967, the supervisor again addressed the hours of duty:
A word of caution is in order. If you schedule an appointment for 9:00 a.m. with the taxpayer and leave from your home and travel to reach the taxpayer’s at 9:00 a.m. and then complete your visit and return to the office at 1:00 p.m., remain in the office until 4:45 and go home, you have not worked a normal 8 hour day. This particular situation was discussed with the group *537 and a conclusion was reached that when you cannot work a full 8 hour day at the taxpayer’s, you should come to the office at 8 a.m. It may be necessary to leave the office at 8:80 or 8:40 but it was agreed that this would be the necessary arrangement to follow.
Another example would be if an examiner went directly from his residence to the taxpayer, arrived at 9:00 a.m. and remained there until 5:45 he would conform to the normal 8 hour work day. This latter situation is approved as it is done for the convenience of the Service. Also you are requested to sign out on the Form 23-A at the time of your aetual appointment. For example, if your appomtment does not begin until 8:30 do not sign out as being at the taxpayer's at 8:00 a.m. Sign out for the actual time of your appointment. (Emphasis supplied.)
Other memoranda in the record indicate the supervisor’s continuing concern — obsession, if you like — with the accuracy of the sign-out sheets and that each field agent work his full hours of duty. These communications were not a general admonition to avoid sin, but comprised specific warnings regarding the exact case plaintiff claims is so trivial as to not require emphasis.
The IRS is rightly concerned with its image of honesty and integrity. Members of the public, who must turn square corners in tax matters, demand no less of revenue officials. Section 1942.55 of the Rules of Conduct makes this clear and provides a stem warning of “severe disciplinary action and prosecution” for failure to be truthful in all matters of official interest, including work reports of any nature, and vouchers.
Plaintiff says that for a first offense, removal is inappropriate, but by Section 1982.8(1) of the Internal Revenue Manual, “Removal action will be taken” for an offense “when a previously administered oral admonishment has not served to prevent a repetition”. That is this case. Plaintiff seems to have supposed that as a professional man, literal adherence to time reporting requirements was not for him, and any fiction for the record would suffice. As a lawyer, he must have understood the risk of adhering to this view in face of express warnings and admonitions. The test, in weighing the *538 penalty against the offense, was laid ont in Heffron v. United States, 186 Ct. Cl. 474, 485, 405 F. 2d 1307, 1312 (1969):
* * * if we are to [find the penalty too harsh], it must be because we find * * * an inherent disproportion between offense and punishment so gross as to appear an abuse of discretion.
Section 1942.55 makes it clear that the Service intended to take severe measures against employees making false or misleading statements in matters of official interest. Among these measures was criminal prosecution. Even a casual reading of this section would indicate that punishment would come to anyone violating the clear mandate for truthfulness set forth there.
In Monahan v. United States, 173 Ct. Cl. 734, 354 F. 2d 306 (1965), where plaintiff had accepted gratuities, we held that the GSA and the Civil Service Commission could properly determine that the offense was serious enough to warrant dismissal. In Heffron, supra, we refused to overturn a dismissal involving acceptance of a “farewell gift” of liquor. We said, 186 Ct. Cl. at 485, 405 F. 2d at 1313:
* * * If at times, as here, this results in tragically wrecking an honorable career for an infraction apparently not of the gravest, this is part of the price that must be paid to maintain the respect and the self-respect of our Government. It is not the result of arbitrary whim or personal vindictiveness. If we judges think we know of some better way to handle this problem, we are not at liberty to impose it in the adjudication of cases.
The point of that case is that within statutory and Presidential guide lines, and in view of agency missions, management has a right to lay down standards of conduct for employees and also to decide whether specific breaches of these standards are serious or petty. If we are able to see a reasonable nexus between a disciplinary action consequent on these determinations, and what the Service deems in good faith its interests to be, our function is at an end.
Plaintiff reported, or caused to be reported, on official sign-out sheets that he was on duty at times and places where he was not. He was responsible for the accuracy of these reports; *539 be bas not argued otherwise. The record shows that repeated demands were made, in meetings and in inter-office communications as well as, on at least two occasions (February 6, 1967 and March 3, 1967), in communications to plaintiff individually from his supervisor, emphasizing that accuracy on the sign-out sheets was of paramount importance.
What we would have done, if we had been in charge, is neither here nor there.
Plaintiff argues that Section 1942.55 requires an mtentiondl misstatement before it becomes operative and invokes what is said in Urbina v. United States, 180 Ct. Cl. 194, 219 (1967) as to scienter. Yet the BAR. decision indicates no plausible explanation for plaintiff’s misrepresentation such as there was in Urbina. The BAR in effect did find plaintiff’s entries on his sign-out sheets to be intentionally untruthful; and we regard such determinations to be more properly within the province of the Civil Service Commission’s administrative review, so long as they are supported by substantial evidence. His explanation of the misrepresentations either were not plausible, or did not refute the charges even if believed.
As in Heffron, supra, we deplore the stranding of a promising career in the shoals of this petty controversy, the more so as, misrepresentation aside, the attendance practices of the plaintiff probably were not very unlike those of many young professional employees of the United States Government. The belief among them is common, that if they do the work, it is nobody’s business whether they observe prescribed hours. It is a prerogative of management, however, to decide whether to tolerate this laxity or to take aims against it, and if the latter course is chosen, whether to prescribe reporting forms such that an employee can continue his habits only by persistent misrepresentation. If management so elects, the rational courses for professional employees are either to conform or to quit the Service. Some will rationally choose one way, some another, according to their strengths and weaknesses, and what they deem most important to maintain in their life styles; those who elect the latter might represent in total quite a loss of talent to the employing Service, which chance it takes. It is not rational to 'attempt to have it both *540 ways at once by falsifying prescribed reports, and the consequence is likely to 'be, to endanger all desired life styles. The employee who has falsified is not favored in this court. Williams v. United States, 193 Ct. Cl. 440, 434 F. 2d 1346 (1970). This case is a distasteful one and the result gives us no satisfaction, but only one holding is possible. We have not here the usual adverse action litigant who asks us to consider whether some offense charged to him is proven by substantial evidence. Those cases can go either way 'and the heavens not fall. Here we have a litigant who wants us to uphold 'him in falsifying information for the INS, which it thinks was important, because he thought and wants us to think it was not so important. Should we do this, the Internal Revenue Commissioner might appropriately invite us to move over to 12th and Constitution and run the show thenceforward, for we would have made it impossible for anyone else to do so.
In view of the grounds upon which we dispose of this case, we need not consider in detail Specification 17, the submission of travel vouchers known to be false. The Regional Commissioner of Internal Revenue and the Regional Civil Service Commission upheld it, but the BAR dora not mention it expressly. The previous admonitions did not deal with it. It would not, therefore, support dismissal by itself, but the remainder is sufficient.
Accordingly, plaintiff’s motion for summary judgment is denied and defendant’s cross motion for summary judgment is granted. The petition is dismissed.