Robert J. HOOVER

v.

The UNITED STATES.

No. 457–73.

United States Court of Claims.

April 16, 1975.

Fred W. Field, Alhambra, Cal., attorney of record, for plaintiff.

Kenneth J. Ingram, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, New York City, for defendant.

Before DAVIS, KASHIWA and KUNZIG, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

Claimant Robert J. Hoover, a tax technician in the Internal Revenue Service, had had twenty-six years of federal employment and about a decade in the Revenue Service when he received, in March 1972, a notice of charges looking toward his removal from the IRS. This letter alleged, with appropriate specifications, that he had filed his federal income tax returns for 1968 and 1969 claiming deductions to which he was not entitled.

Plaintiff put in a written response and also made an oral reply. The District Director upheld the reasons and specifications in the notice of adverse action and ordered that Hoover be separated from his position on May 12, 1972.

Plaintiff appealed to the Regional Commissioner of the Service and was granted a formal hearing within the agency. The appeals examiner who presided at this hearing recommended that the adverse action be sustained, and this suggestion was followed by the Regional Commissioner.

Plaintiff then appealed to the Regional Office of the Civil Service Commission which accorded him another hearing, this time before a civil service appeals examiner. The Regional Office upheld the removal, and on further appeal to the Board of Appeals and Review, this was affirmed in June 1973. This suit was then brought to review the administrative proceedings and decisions. Both parties have moved for summary judgment and there is no request that further evidence be taken in this court.

The charges sustained by the Civil Service Commission were that (a) in his tax return for 1968 plaintiff claimed deductions to which he was not entitled with respect to payments to doctors and dentists, contributions, and interest paid, and (b) in his 1969 return he claimed deductions (again, to which he was not entitled) for medical and dental expenses, moving expenses, contributions, taxes, and union dues. There is no contest that these deductions were incorrect, but Hoover urges that even an IRS employee cannot be removed merely for making mistakes on his returns.

■ This contention has given us some pause because the letter of proposed adverse action does not explicitly charge anything more than that the deductions were incorrect. We are satisfied from the record, however, that the case was actually pursued in both the IRS and the Civil Service Commission on the theory that plaintiff could not be separated unless there was proof and a finding that his actions in taking the deductions were

deliberate (in the sense that he knew he was not entitled to them) or at least grossly reckless and grossly negligent, without any concern whether or not he could properly take the deductions. The Board of Appeals and Review dealt with the contention "that the deductions claimed on his returns in 1968 and 1969, even though fictitious and incorrect, were caused by negligence on his part" by pointing out that "the evidence shows that what was involved here was not simply errors resulting from negligence" and that "the appellant was aware of the consequences which would result when the regulations of the Internal Revenue Service were violated  *  *." The Commission's Regional Office said that "as a Tax Technician responsible for auditing the income tax returns of other citizens, the [plaintiff] was fully aware of his responsibility as a taxpayer to accurately declare deductions supportable by appropriate records on his own tax returns"; in addition, with respect to the major specification relating to medical deductions for 1968 the Office rejected the view that this was merely the result of negligence, characterizing it instead as "willful, culpable misconduct"; and with regard to plaintiff's claimed moving expenses for 1969, the Regional Office said that he "knowingly overstated the mileage difference in order to qualify for a moving expense deduction for 1969." [1]

Not only was the case tried and determined on the basis that mere negligence would be insufficient cause for discipline, but at least as to the major charges there was solid and substantial supporting evidence for these findings of culpa-

bility. For 1968 plaintiff claimed $1,860 in medical and dental expenses; the Service audit allowed no deduction. The record shows that an IRS inspector contacted the five doctors listed on the return, or their employees, to discover what payments plaintiff had actually made. Three reported that they had no record of treating Hoover or any member of his family that year and received no money at all from him; the records of the other two showed that plaintiff had overstated his payments to one by $270 and to the other by $320 or $330. The total of the claimed payments for which there were no supporting records was $1,670. Plaintiff's excuse for the discrepancies is that he simply relied on his wife's bare recollection as to what payments she had made to doctors and dentists during 1968. It is clear, however, that as a knowledgeable tax technician Hoover knew that the IRS required supporting documentation before allowing such medical expenses to be deducted, and he never attempted to call the doctors or obtain some proof for his wife's casual recollection.

Probably the most damning evidence on this point is that for 1968 plaintiff deducted $375 for payments to a doctor who was his own personal physician, but that doctor's office indicated to the IRS inspector that Hoover had not been there at all since 1967. Plaintiff insisted that he had in fact visited this doctor many times in 1968 and had always paid in cash, but he had no receipts. The triers of fact were of course not compelled to credit his unsupported testimony or his

1. At the hearing within IRS, the management representative said that "what we have before you today is not a matter of mistake  *  *  * nor is this case before you because Mr. Hoover incurred deficiencies," and later he said that it "is perfectly obvious we think that what we have here in at least some of these entries in the returns are not innocent errors but deliberate falsifications"; in discussing some of the individual specifications the management representative also made it clear that he was not talking about oversights, mistakes or innocent errors but about intentional or reckless falsifications.

At the separate Civil Service Commission hearing, the same management representative argued that the errors might be "inadvertent and innocent and accidental" if made by a person "not trained in tax matters," but "in the case of an experienced man like Bob Hoover, these errors have to be deliberate and they have to be willful"; he also said that "[t]here is no doubt in our minds that he deliberately took deductions to which he was not entitled," and with respect to the medical deductions he said: "This is not accidental. This has to be willful for someone in his position."

explanation that the receipts were lost in a move he made in December 1969.[2]

The other main allegation against plaintiff concerned moving expenses ($382) he claimed for 1969. This deduction was taken, he said, because of a change in his driving to work. The return showed that the distance from his residence to his new business location was 26 miles and the distance from his residence to his former business location was 5 miles. Moving expense deductions were not allowable for the 1969 tax year unless the difference between the two distances travelled was 20 miles or more. In fact, the actual change in the distance to Hoover's job caused by his move was only 3.5 miles. He admitted at the Commission hearing that, although the regulations plainly required the distances to be measured in straight lines, he had deliberately not used that method but had instead employed his own estimate of the time he spent on the road. This admission was clearly substantial enough support for the charge of deliberately creating a deduction where none could lawfully be taken.[3]

A barrage of procedural complaints is levied against the charges and the administrative proceedings, but none is sufficient to vitiate the determination of removal. We put to one side general arguments which have been authoritatively rejected, such as that the employee is entitled to all the protections of a criminal trial (see Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)), and that hearsay is inadmissible (see Peters v. United States, 408 F.2d 719, 722–23, 187 Ct.Cl. 63, 70–71 (1969)). The points we now consider are those tied specifically to these particular proceedings.

As we have already indicated, plaintiff understood and was made to understand the crux of the allegations against him, and was not misled by the possibility that he was merely being charged with having made innocent or negligent errors in his tax returns. It is settled, too, that the general standard of promoting the efficiency of the service is adequate for removal or discipline (Arnett v. Kennedy, supra, 416 U.S. 134, 161, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)), and in this instance we think that there can be no doubt that it promotes the efficiency of the civil service to proceed against an IRS tax technician—responsible for overseeing other taxpayers' returns—who deliberately or recklessly overstates his own deductions. "The IRS is rightly concerned with its image of honesty and integrity. Members of the public, who must turn square corners in tax matters, demand no less of revenue officials." Birnholz v. United States, 199 Ct.Cl. 532, 537 (1972); see also Kandall v. United States, 186 Ct.Cl. 900, 935, cert. denied, 396 U.S. 837, 90 S.Ct. 98, 24 L.Ed.2d 89 (1969). Promotion of the "efficiency of the service" is not restricted to testing the employee's work-efficiency or his performance on the job. See Arnett v. Kennedy, supra.

There is an accusation that witnesses plaintiff wished to call at the IRS hearing were not produced by management. No good ground exists for questioning the rulings on this point of the examiner who presided at that hearing. Several of these persons had no knowledge of any of the relevant issues; some were no longer in IRS employ; others were demanded in order to talk about penalties imposed by IRS in adverse action cases but there was no showing that any of them had knowledge of cases directly comparable to plaintiff's. One witness, who had audited Hoover's return, was made available but was not called either at the IRS or at the Civil Service Commission hearing. It is clear that, at the

---

2. The claimed medical expenses of $1,214 for 1969 were shown, through a similar inquiry made of the doctors, to be overstated by $692. Again, plaintiff did not attempt to verify the payments made, nor did he try to sustain them by records of any kind.

3. We do not canvass the evidence with respect to the lesser specifications since we are of the view that the administrative decision can be supported on the major charges relating to the medical and dental deductions for 1968 and 1969, and to the moving-expense deduction for 1969.

latter, plaintiff had available any IRS witnesses he had indicated he desired, but his representative failed to call most of them. It is also plain that he had full opportunity to cross-examine the IRS inspector (the only management witness at either hearing) who gave the crucial testimony against him.

Other scattershot charges against the proceedings are either unproved or irrelevant to the agency's and the Commission's final determination. The suggestion is made that the IRS first suspected that plaintiff was guilty of accepting a bribe, and that this accusation colored and tainted the whole adverse action proceeding. Although plaintiff's tax returns may have originally been made subject to audit because of this suspicion, the fact is that he was never charged with bribery, no attempt was made to prove or suggest that he had engaged in such misconduct, and he was early told that he had been cleared of suspicion of bribery. Nor does the record show that this initial suspicion motivated the later adverse action proceeding or the removal. It is not unusual for an inquiry set off by one particular matter, which is later found to be groundless, to turn up evidence of other unrelated misconduct which then becomes the foundation for well-supported adverse action proceedings.[4]

■■ It is also said that the IRS inspector refused to allow plaintiff to have a union representative with him at the interview with the inspector (prior to the issuance of the letter of charges). If this was so, it was immaterial to the determination of the formal adverse action proceedings which did not rest in any significant sense on statements or admissions made by plaintiff to the inspector. Another claim is that claimant was entitled, in the proceedings following the letter of charges, to see all of the inspector's report, even that portion which was unconnected with the charges actually made. The answer is that the

regulations require the employee to be supplied only with "the material * * relied on [by the agency] to support the reasons in that notice" (5 C.F.R. 752.-202(a)(2) (1974))—and that was done here.

Bias is alleged on the part of the oral reply officer but there is no warrant in the record for this accusation, and plaintiff's representative admitted at the close of that meeting that "We had our opportunity to say everything that we hoped to say." A separate charge of bias against the IRS hearing examiner is likewise unsustained by the record, as the Civil Service Commission found. The further allegation that that examiner should have disqualified himself because he and the management representative had once attended a school together is obviously frivolous.

■ We come finally to the point that the penalty of removal was too severe for the offense, especially in view of plaintiff's twenty-six years of federal service and eleven years in the IRS. This is a furrow which has been well plowed in recent years. *See* Grover v. United States, 200 Ct.Cl. 337, 353–54 (1973), and cases cited. In this case we cannot say that there is an inherent or gross disproportion between the punishment of removal and the offense of an IRS tax technician's knowingly or recklessly overstating his deductions in his personal return for his own tax benefit. In the words of the Board of Appeals and Review: "As a Tax Technician the appellant was responsible for auditing the income tax returns of other citizens and to see that these citizens were complying with the laws of the Internal Revenue Service. However, the appellant in taking improper deductions did exactly what was his duty to prevent."

The record reveals more than substantial evidence to show that he knew he was doing wrong. Certainly there is no excuse for his claiming considerable

---

**4.** In this connection we agree with the Civil Service Commission that the record does not support plaintiff's claim that the IRS inspector put him under duress during an interview re-

garding his tax returns by implying a threat to accuse him of receiving a bribe in connection with a tax audit Hoover had performed.

medical payments to his own personal physician in 1968 when the evidence shows that he did not visit that doctor at all after 1967. The administrative agencies found, and could properly find, that this was not a case of mere sloppiness or negligence but a deliberate effort to decrease his tax in the expectation that his misstatements would not be discovered (or, if they were, that he would simply have to pay the difference in tax). As we have stressed, the "IRS is rightly concerned with its image of honesty and integrity" (Birnholz v. United States, *supra,* 199 Ct.Cl. 532, 537 (1972)). It was not an abuse of discretion to separate this tax official who was found to have culpably made, for his own benefit, overstatements of the very kind taxpayers are regularly warned against.

The plaintiff's motion for summary judgment is denied, the defendant's motion is granted, and the petition is dismissed.