**Margaret BOYCE and Minnie Dixon**

v.

**The UNITED STATES.**

No. 384–74.

United States Court of Claims.

Oct. 20, 1976.

---

Robert M. Tobias, Washington, D.C., atty. of record, for plaintiff.

Julie P. Dubick, Washington, D.C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D.C., for defendant.

Before NICHOLS, KASHIWA and KUN-ZIG, Judges.

ON PLAINTIFFS' MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

In this civilian pay case plaintiffs Margaret Boyce, formerly employed as a career seasonal GS–2 data transcriber, and Minnie Dixon, formerly a GS–3 file clerk, contest their dismissals from employment with the Internal Revenue Service (IRS). Plaintiffs seek both reinstatement and back pay. The IRS removed them from their positions because they had failed to file certain tax returns in a timely manner. We find the penalty of dismissal so disproportionate to plaintiffs' offenses that defendant's conduct can only be described as an abuse of discretion. Accordingly, we hold for plaintiffs.

Both Mrs. Boyce and Mrs. Dixon were employed, before their separations, at the IRS Kansas City Service Center. Until their removal, both had performed their duties satisfactorily throughout their careers. Mrs. Dixon for some 13 years and Mrs. Boyce for 12. In the fall of 1972, Mrs. Boyce received notice of a proposed adverse action. After her personal reply, she was removed on December 1, 1972. In November 1972, Mrs. Dixon received notice of a proposed adverse action and on February 20, 1973, she was removed.

Both plaintiffs appealed their removals to the Civil Service Commission (CSC) Regional Office. *In each case, the CSC Regional Office reversed the removal* and the IRS appealed. The CSC Board of Appeals and Review (BAR) held that Mrs. Dixon should be reinstated after a 60-day suspension. Mrs. Boyce was ordered reinstated after a 90-day suspension. While the charges were sustained, the BAR, like the CSC Regional Office, concluded that under the circumstances the penalties of removal were unwarranted as unduly harsh.

The IRS again appealed, requesting that the CSC Commissioners reopen the BAR decisions. Because the cases were similar, the IRS asked the Commissioners to consider them jointly. Accordingly, the cases were reopened and in a single decision, the CSC overruled the BAR and upheld the dismissals.

Plaintiffs then timely brought the present action attacking the CSC decision. Plaintiffs' assault takes three forms: First, they argue that the IRS did not establish a rational nexus between the conduct complained of and the efficiency of the service. Second, they contend that the penalty of dismissal was so harsh as to be arbitrary and capricious. Third, they charge that the CSC decision embodies various procedural failures including lack of notice and an opportunity for plaintiffs to oppose reopening of the BAR decision and refusal of the Commissioners to provide adequate reasons for overriding the BAR.

Defendant counters that the decision to remove plaintiffs was not arbitrary and capricious, but was supported by substantial evidence. It would have the court find that the penalty of removal was reasonable, and that the CSC decision was not procedurally defective.

Because we find the penalty of dismissal unduly harsh in the instant fact situation, we hold for plaintiffs.[1]

---

1. Since our decision is based on the harshness of the penalty, we do not reach plaintiffs' rational nexus argument. The procedural argument has been considered, *infra,* in connection with the invalidity of the penalty.

■ Initially, we note that there is substantial evidence in the record to find plaintiffs guilty of failing to file tax returns in a timely manner. In fact, both plaintiffs had conceded during the course of the proceedings below that they had not timely filed the tax returns in issue. Our review of administrative determinations is limited to a finding of substantial evidence supporting the decision. *See, e. g., Peters v. United States,* 408 F.2d 719, 187 Ct.Cl. 63 (1969); *Powers v. United States,* 169 Ct.Cl. 626 (1965). In the present situation, there is adequate evidence to show that plaintiffs were guilty of failure to file tax returns in a timely manner. Some punishment was clearly warranted.

However, plaintiffs have more than adequately demonstrated that the penalty of dismissal was in no way warranted given the circumstances of this case.

■ We start our inquiry into the propriety of the penalties by again stating the standard for review of administrative sanctions. In an overall sense, it is well established that the penalty for employee misconduct is a matter usually left to the sound discretion of the executive agency. *See, e. g., Hoover v. United States,* 513 F.2d 603, 206 Ct.Cl. 640 (1975); *Birnholz v. United States,* 199 Ct.Cl. 532 (1972); *Cook v. United States,* 164 Ct.Cl. 438 (1964). However, if the punishment exceeds the range of sanctions permitted by statute or regulation, *Daub v. United States,* 292 F.2d 895, 154 Ct.Cl. 434 (1961); *Cuiffo v. United States,* 137 F.Supp. 944, 949, 131 Ct.Cl. 60, 68 (1955), or if the penalty is so harsh that it amounts to an abuse of discretion, *Heffron v. United States,* 405 F.2d 1307, 1312, 186 Ct.Cl. 474, 484 (1969); *Jacobowitz v. United States,* 424 F.2d 555, 563, 191 Ct.Cl. 444, 458–59 (1970), it cannot be permitted to stand.

In the case at bar, plaintiffs do not allege that dismissal fell outside the range of penalties prescribed for failure to file tax returns in a timely manner. However, they contend that in light of all the facts, the penalty of dismissal was "unconscionably disproportionate." We agree.

In *Power v. United States,* 531 F.2d 505, 209 Ct.Cl. 126 (1976), plaintiff, a GS–9 ammunition inspector, had been found guilty on two relatively minor charges of submitting false information in connection with claims for travel expense reimbursement. He had been absolved of guilt on a major accusation. Still, the agency dismissed him based on its finding of culpability because of the lesser charges. We reversed, pointing out that the penalty did not fit the crime. Our decision was founded on four factors. First, the evidence supporting guilt was so slim and the *de minimis* nature of the amounts concerned made it extremely doubtful that plaintiff had knowingly and wilfully submitted false information. Second, certain procedural aspects of the case made the penalty appear unduly harsh: the agency had delayed over a year in bringing the charges and by joining the two minor charges with an unsupported serious allegation, it appeared that dismissal for the lesser offense might have been the vehicle for removing plaintiff where the agency was convinced that plaintiff was guilty of the serious act, but could not prove it. Third, defendant attempted but completely failed to demonstrate that the maximum penalty was necessary to deter expense account "padding." Finally, plaintiff had an unblemished record of 25 years of Government service. In such circumstances, we concluded that it was an abuse of discretion for defendant to impose the penalty of dismissal. The sanction was "so harsh and unconscionably disproportionate to the offense that it could not be permitted to stand."

In sharp contrast stands the case of *Rifkin v. United States,* 209 Ct.Cl. 566 (Decided April 14, 1976). There, a GS–12 employee stationed in Germany had deliberately, wilfully and intentionally altered travel documents to show his appointment as a GS–13 in order to obtain First Class steamship passage on a return trip to the United States. Plaintiff admitted the offense and

justified his conduct only by saying that he did it in a moment of weakness. There was no procedural problem with the agency's handling of the case (no undue delay in bringing the charges; no major charge which was dropped). Under those facts, the court held that the penalty of dismissal was not unconscionably disproportionate (despite the fact of plaintiff's satisfactory record of 23 years of Government service) and that the agency's exercise of discretion was proper.

First, on balance, it is extremely doubtful that plaintiffs knowingly, intentionally and wilfully failed to file tax returns in a timely manner. The charges against plaintiffs were for failure to file returns in a timely manner, *not* for wilful failure to file and *not* for a wilful attempt to evade taxes. As in the *Power* case, defendant fails to show that the amount of taxes involved is anything but *de minimis*. Indeed, it appears that all of Mrs. Dixon's returns involved refunds. Many, if not most, of Mrs. Boyce's returns also involved refunds. It is incredible to believe that one would intentionally delay filing a tax return in order to delay receipt of a tax refund.

Moreover, both plaintiffs argued and the IRS never rebutted the fact that they delegated their filing responsibility to their husbands. While such reliance obviously cannot be justified, this shortcoming goes to proof of guilt—not to the propriety of the penalty. While plaintiffs cannot evade responsibility for their failure to timely file by reliance on their husbands, such reliance does relate to the wilfulness of their action. In the present circumstances, such reliance demonstrates that plaintiffs' failures were not intentional, but arose from a misguided belief that their husbands would "take care of" the returns. Such conduct cannot be sanctioned, but in imposing a penalty for such conduct, the agency must take some notice of the realities of modern life, the complexities involved in filing tax returns, the fact that most returns by married individuals are joint returns, and that general-

ly, one spouse will rely on the other to execute the forms.

Even the Internal Revenue Code demonstrates a leniency for "unsuspecting spouses." Section 6013(e) of the Internal Revenue Code[2] provides that in certain circumstances, the spouse who did not know or have reason to know of an omission of income and did not derive substantial benefit therefrom, will be relieved of liability. Certainly the instant case provides a close analogy to this philosophy of leniency expressed in the Code.

In short, while plaintiffs cannot escape responsibility for failure to file tax returns in a timely manner by relying on their spouses, such inadvertent conduct should be reflected in the penalty imposed. Defendant is not justified in imposing the same penalty for an individual who misguidedly relies on his or her spouse to file tax returns as it would for an employee who intentionally declines to file or falsely files in order to evade his taxes. Yet the IRS has done so in the instant case by imposing the ultimate sanction of dismissal. Again, the penalties emerge as unconscionably harsh.

In addition, the nature of plaintiffs' employment presents a clear inference that any shortcomings were not knowing, intentional or wilful. Mrs. Boyce was a seasonal GS–2 data transcriber, and Mrs. Dixon a GS–3 file clerk. One cannot say (as with Mr. Rifkin, a GS–12 who tried to make himself a GS–13) that they knew it was improper to rely upon their husbands to file the tax returns. This is not the case of an audit agent or a managerial employee who intentionally claims deductions or expenses to which he is not entitled. (*See, e. g., Hoover v. U. S.,* 513 F.2d 603, 206 Ct.Cl. 640 (1975)). This is the case of two low-level IRS employees who improperly, but without intent to hurt the Government, relied on their husbands to file their tax returns.

Accordingly, it is plain that neither Mrs. Boyce nor Mrs. Dixon failed timely to file tax returns knowingly, wilfully or inten-

**2.** Int.Rev.Code of 1954, § 6013(e).

tionally. This factor must, of necessity, be taken into account in evaluating the propriety of the penalties imposed by defendant.

Second, there are procedural elements in the record of this case which, although not in and of themselves providing a basis for reversal, clearly enter into any justifications of the penalties meted out to plaintiffs. In *Power, supra,* two minor charges were joined with a serious and significant accusation. The serious count failed, but the harsh penalty of dismissal for only the minor charges suggested that the Government discharged plaintiff based on its continuing, unsupported belief that he was really guilty of the serious offense. Moreover, in *Power,* there was a one-year delay in bringing the charges. Such facts had a distinct bearing on the severity of the allowable sanction.

█ In the case at bar, both the CSC Regional Office and the BAR held specifically that plaintiffs' conduct did not justify dismissal. However, the CSC Commissioners reopened the case and reversed. Plaintiffs argue that the procedures involved in reopening the BAR decision failed to satisfy the requisites of fundamental fairness mandated by the Constitution. We need not reach the merits of this contention. However, even if the technicalities of due process were properly complied with, we must note that the manner of dealing with plaintiffs' case of necessity interrelates with the severity of the penalty imposed. Given the unusual nature of the CSC Commissioners' action in reopening the BAR decision and the narrow situations in which such reopening is justified,[3] the CSC must be careful to observe the basic dictates of fairness in such instances, particularly where an extremely harsh penalty is sought by the agency.

Moreover, balanced against the rather lengthy discussions by the BAR in its opinion (for the decision that dismissal was too

severe), we find the illumination provided by the CSC Commissioners for their reversal of the BAR to be dim. The only phrase remotely cognizable as the basis for the CSC action is in the nature of a conclusion rather than reasons for justifying its action:

> In making their decision to uphold the removal actions taken in the two cases, the Commissioners determined that the charges which were sustained were of sufficient gravity to warrant the penalties of removal. * * * [CSC letter, May 8, 1974].

The CSC letter contains no discussion of the offenses, no discussion of the duty performances of plaintiffs, and significantly, no discussion of *intent,* a factor which caused the BAR to hold the penalty of dismissal too severe.

Recently, in *Craft v. United States,* 544 F.2d 468, 210 Ct.Cl. 170 (Decided June 16, 1976), we were confronted with a case in which a Physical Review Council reversed a Physical Evaluation Board and failed to provide reasons for its action. In that case, the reviewing agency was required by regulation to give reasons for its action. We noted that where the agency fails to give reasons, the court cannot accord the usual deference to the exercise of administrative discretion. At 473, 210 Ct.Cl. at ——. Although in the instant case there is no mandatory requirement for the CSC to give reasons for its reversal of the BAR (thus failure to give reasons is not in and of itself a basis to reverse the CSC), we reemphasize that in order to accord the usual degree of finality to the CSC decision, the reasons for the decision should be enunciated. *See, e. g., Kowal v. United States,* 412 F.2d 867, 873, 188 Ct.Cl. 631, 643 (1969).

In short, in the instant case, the CSC reopened the decision of the BAR without affording full participation rights to plaintiffs to argue against the reconsideration.

---

3. 5 C.F.R. § 772.310 (1976) provides the procedure and the instances where a BAR decision may be reopened. In the case at bar, it appears that plaintiffs' cases were reopened primarily for the precedential value which would attach to the dismissal of these two ladies.

Letter from IRS Comm'r. Donald C. Alexander to CSC Chairman Robert E. Hampton, Aug. 23, 1973. In such instance, the CSC should have been extremely careful to accord plaintiffs' full participation in its decision to reopen the cases.

More importantly, the CSC reversed the BAR and found the penalties of dismissal appropriate without providing reasons for its decision. In such a situation, it is impossible to conclude that the CSC properly exercised its discretion because we cannot ascertain the basis for its decision.

Finally, we come to what appears to be the real basis for the CSC's reversal of the BAR: deterrence and concern with the public image of the IRS. The IRS letter requesting the CSC reopening stated:

> I believe these two appeal decisions will establish dangerous precedent for us in the important tax area. * * * Neither the employee who knowingly fails in his tax responsibilities nor the employee who is grossly negligent in attending to them belongs in an agency whose mission is the collection of taxes. * * * [Letter from IRS Comm'r. Donald C. Alexander to CSC Chairman Robert E. Hampton, Aug. 23, 1973 at 10.]

In the *Power* case, defendant attempted to justify removal based on a goal of deterrence. We stated that "[d]eterrence can be an effective method of preventing fraud upon the Government." This is true. The matter is even more crucial when we are confronted with misconduct by IRS employees. Theirs is a highly visible agency which is "rightly concerned with the image of honesty and integrity." *Birnholz, supra,* 199 Ct.Cl. at 537; *Hoover, supra,* 513 F.2d at 606, 206 Ct.Cl. at 646. However, as we stated in *Power,* a penalty can be so harsh as to "effectively ruin defendant's goal of deterrence."

Should a powerful government agency seek the severe penalty of dismissal for every *de minimis* offense, not only might the goal of deterrence suffer, but potential employees might equally be deterred from seeking positions with the agency. Further, a reputation for gross unfairness generated by such dismissals could have a much more harmful impact on the public image of the IRS than would carrying a person on the payroll who has failed to file income tax returns.

In addition, imposing the same penalty on two low-level employees who unintentionally fail to file tax returns in a timely manner by relying on their spouses, as on an IRS tax technician who "culpably, for his own benefit" overstates tax deductions creates a dangerous precedent.

In short, an unconscionably disproportionate penalty aids neither the goal of deterrence nor the image of the IRS. "If a penalty is so harsh as to constitute an abuse, rather than an exercise of discretion, it cannot be allowed to stand." *Power, supra; Jacobowitz, supra.* In the instant case, like *Power,* plaintiffs' offenses in no way justified removal. "Their punishment did not fit their crime."

In summary, this is another case where the penalty is "so unconscionably disproportionate that it becomes an abuse of discretion." Plaintiffs with 12 and 13 years of satisfactory service respectively, were removed for failure to file tax returns in a timely manner. Plaintiffs were GS–2 and GS–3 employees who relied upon their husbands to file the returns. Defendant has not shown that they benefitted in any way from their shortcomings. To the contrary, it appears that they were denied timely tax refunds. Accordingly, it is extremely doubtful that plaintiffs' improper conduct was in any way wilful, knowing or intentional. Moreover, two separate reviews of the decision to dismiss plaintiffs concluded that such a penalty was too harsh. Yet the CSC Commissioners, without providing reasons, reopened the case and reinstituted the penalty. In such circumstances, the CSC determination cannot be accorded its usual deference. Finally, given these facts, the penalty cannot be justified either under a goal of deterrence or as a means to maintain a proper agency image.

Again, we reemphasize that generally, agency penalties will be viewed as a matter within agency discretion. However, in the facts of the instant case such discretion has been abused due to the disproportionate harshness of the penalty. *Contrast Pascal v. United States,* Ct.Cl., 543 F.2d 1284, decided this day.

Accordingly, plaintiffs' motion for summary judgment is granted, and defendant's cross-motion for summary judgment is denied. Judgment is entered for plaintiffs. Pursuant to the authority granted to the court in 28 U.S.C. § 1491, as amended by Pub.L. 92–415, plaintiffs are ordered to be reinstated.[4] The case is remanded to the Trial Division for further proceedings under Rule 131(c) to determine the amount to be awarded plaintiffs consistent with this opinion.

NICHOLS, Judge (concurring):

I join in the decision and in Judge Kunzig's opinion, except that I take exception in particulars that are stated below, which seem to me important.

1. Certainly an administrative decision loses much of its weight on judicial review if no reasons for it are given. However, it may expressly or by implication adopt the prevailing party's statement. Here the Civil Service Commission has, I think, adopted as its own, by implication, IRS Commissioner Alexander's letter protesting the BAR decisions concerning Boyce and Dixon. If we are to fault a lack of reasons for the CSC decision, we cannot ignore the articulation given in that letter.

2. I am not much impressed with the fact that plaintiffs relied on their husbands to prepare and file joint tax returns. They had actual notice their husbands could not be relied on to file returns on time. Dixon had a reprimand in her file on this account, though it was not considered in assessing the penalty. The BAR, however, mentions it. The Alexander letter says Boyce was the sole support of her family, for which she assumed full financial responsibility. Though some might read this as an argument for Boyce, it does to some degree undermine her right to rely on Mr. Boyce. She received the W–2's, the usual signal to prepare a return.

3. Mr. Alexander ignores the fact that so many of the returns were refund returns. In my view, an assessment of the actual and potential loss of revenue would be an indispensable component of an informed and reasoned decision on the penalty in this kind of case.

4. I question the propriety of lumping into the charges, without distinction, delinquencies in filing Federal and State returns. It is up to the States to enforce their own tax laws. If state taxes are not paid, taxpayers cannot take deductions for them on Federal returns. The two types of infringements are not the same. To lump them together in the charge makes a superficial impression of utter lawlessness, which a better acquaintance with the State's assessment and collection procedure perhaps might in large measure dispel.

5. The BAR makes what appears to me a valid point: though employees were warned they must satisfy their tax obligations, and that the agency will discipline them if they don't, there is no express warning in the involved Bulletins that dismissal will be the automatic penalty, always or in any specified kind of case. The issue is, therefore, not like *Heffron v. United States*, 405 F.2d 1307, 186 Ct.Cl. 474 (1969) wherein we upheld a severe penalty, dismissal, for a relatively minor offense, in part because the employees had all been warned by circular, only two months before the violation, that there would be no second chance; dismissal would follow even a first offense. For the BAR or us to hold for the employee there would have been to pull the rug from under management's feet. Likewise in *Birnholz v. United States*, 199 Ct.Cl. 532 (1972), the plaintiff had received warnings committing the agency to a severe reaction in case he offended again. In contrast, Mr. Alexander is weak on this issue, alleging that Boyce's offense is the most aggravated ever encountered in an appeal to the Commission (a matter of judgment, surely) and that employees had ample notice not to commit it, but not answering the BAR's specific point. He does not assert

---

4. Nothing in this opinion is intended to contravene the discretionary authority of the Commissioner of Internal Revenue to administer an appropriate penalty such as that originally proscribed by the BAR.

that every tax delinquency demands removal. If the offenses do not appear as relatively horrendous to others as they do to Mr. Alexander, his argumentative structure loses its linchpin, where as in *Heffron* this issue was virtually mooted.

6. The really vital controversy between the BAR and Mr. Alexander is that the former concedes—as all must—the need for a particularly high standard of conformity to tax laws by IRS employees in managing their personal finances, but does not extend it to Boyce and Dixon because they "had no contact with the public." Presumably, therefore, for them the standards are those which any Government agency might reasonably demand of GS–2 and GS–3 employees. Mr. Alexander says the same rigid standards apply to GS–2 and GS–3 file clerks in the IRS as to GS–11 agents because they work "in a direct support of those employees who do contact the public."

The "meets the public" canon does not appear to me as reasonably defining the proper line between the high IRS standard and the lower, though still demanding one, applicable to those employed in more neutral activities. Meeting the public is a duty, not a privilege, and there are some high ranking persons in the IRS, I believe, who do not normally meet the public in course of doing their jobs. The damage one of these would cause, if he were known to be habitually tax delinquent, would not be less. Whether tax delinquency by an IRS employee produces an adverse public reaction, destructive of the agency's capacity to perform its mission, does not depend on and is not confined to the persons he actually meets in line of duty. *Cf. Wathen v. United States*, 527 F.2d 1191, 1207, 208 Ct.Cl. 342, 368 (1975), cert. applied for.

On the other hand, even in Mr. Alexander's eyes there are apparently some IRS employees who do not come under the rigid standard because they neither meet the public nor work in support of those who do.

Both contenders appear to me too mechanical and simplistic in the rules they would apply. The public would form an adverse judgment on the entire agency and the program it administers, from the tax malfeasance of an individual, or would not do so, depending on the individual's rank in the IRS, his pay, his experience, the extent to which the agency relies on his honesty, his performance of discretionary functions, and his exercise of professional judgment. Not just meeting the public, but having transactions on the agency's behalf with members of the public, would be another factor, no doubt. The public would not draw the same conclusions from the delinquencies of Boyce and Dixon, and from similar ones which, in a purely hypothetical case, might be committed by a couple of deputy commissioners. Mr. Alexander himself, one surmises, would not listen with patience to a deputy commissioner, caught in *flagrante delicto*, who might tell him the penalty should not depend on rank, but should be for him the same as for a GS–2 clerk.

7. I recognize our recent holding in *Wathen, supra*, that "efficiency of the service" is for agency definition, but that case of course does not impair authority of the cases Judge Kunzig relies on, that an extreme disproportion between offense and punishment is an abuse of discretion and will be reversed as illegal. Mr. Alexander's stated rule requiring disregard of the most relevant factors in fixing the penalty of an IRS employee for tax delinquency is itself arbitrary and capricious and makes arbitrary and capricious any CSC decision that relies upon it.

8. Of course I agree that some disciplinary action was necessary as both Boyce and Dixon had committed serious infractions of the rules of conduct. The suspensions proposed by the BAR seem reasonable. The Commission was arbitrary and capricious in reversing the BAR for the improper reasons, suggested to it in the Alexander letter, whether or not it might have done so for proper ones. I agree that nothing we hold is intended to contravene the discretionary authority of the Commissioner of Internal Revenue to administer an appropriate penalty such as the BAR originally prescribed.