**James F. WEISS, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

**Merit Systems Protection Board, Intervenor.**

**No. 82–1351.**

United States Court of Appeals, First Circuit.

Submitted Nov. 5, 1982.

Decided Feb. 16, 1983.

Amy R. Tabor, and Mann & Roney, Providence, R.I., for petitioner.

Lincoln C. Almond, U.S. Atty., Everett C. Sammartino, Asst. U.S. Atty., Providence, R.I., Edward F. Ward, Jr., Asst. Gen. Counsel, Eric J. Scharf, Atty., U.S. Postal Service, Washington, D.C., for respondent.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

COFFIN, Chief Judge.

Charging that plaintiff had been AWOL on three occasions and citing five past disci-

---

plinary actions in plaintiff's record, the United States Postal Service proposed to discharge plaintiff. On plaintiff's administrative appeal, the presiding official of the Merit Systems Protection Board (MSPB) found plaintiff had been AWOL on the three specified dates, but, applying a preponderance of the evidence standard, concluded the Postal Service had failed to prove removal was an appropriate penalty and reduced the penalty to a fourteen day suspension. The Postal Service appealed to the MSPB which reversed the presiding official and upheld the Postal Service's decision to remove plaintiff, whereupon plaintiff filed this appeal. The issue on appeal is the appropriate standard of administrative review of the Postal Service's penalty determination.

Many of the basic facts relevant to an understanding of the issue presented were uncontested. It was undisputed that plaintiff, hired in February 1973, had a poor attendance record. The notice of proposed removal charged plaintiff with being AWOL on December 29, 1979, January 15, 1980, and February 27, 1980 and enumerated five "elements" of plaintiff's record which would be considered in determining the disciplinary action to be imposed in the event the AWOL charges were sustained. The five were an August 18, 1976 letter of warning which referred to the use of 332 hours of sick leave in the preceding eleven months; a November 1977 suspension for having been absent more than 800 hours—which included three occasions of being AWOL—in the calendar year; a March 1979 suspension for having been AWOL on March 7, 1979, the suspension notice also having referred to five other AWOL's from December 1977 through February 1979; a July 1979 suspension for having failed to

report for duty as scheduled 24 times between March 1979 and June 30, 1979; and a November 1979 suspension for having requested unscheduled leave on eight occasions since the last suspension, the suspension letter also noting an October 23, 1979 AWOL. Plaintiff did not deny that he was absent on any of the above mentioned occasions, but instead, presenting medical evidence which indicated plaintiff had had a back problem since July 1976 and a doctor's note that his wife had been hospitalized on various occasions from early 1979 through January 5, 1980, plaintiff sought to excuse his earlier absences on those bases. Plaintiff testified his back problem was currently under control and his wife was recovered, and therefore he claimed his attendance in the future would be regular. As for the AWOL's, plaintiff admitted applicable rules required him—on pain of being classified as AWOL—to provide acceptable contemporaneous verification for his absences, and he proffered a number of excuses for his failure to have done so.

The presiding official reviewed the justifications proffered for the agency's decision to discharge plaintiff. With reference to the five past disciplinary actions which the letter of proposed removal had stated would be considered in determining the disciplinary action to be imposed (i.e., the letter of warning and the suspensions described on pages 2–3 of this opinion), the presiding official ruled, without objection from the Postal Service, "that the taking of approved leave was not an offense against the employer/employee relationship ... and that disciplinary action based solely upon the taking of approved leave [1] [was not] a proper justification for enhancing a penalty." [2] The presiding official did recognize

1. Unscheduled absences, i.e. those absences not requested and approved in advance occurring during a time an employee had been regularly scheduled to work, are of two types—approved absences (those where the employer subsequently accepts the employee's excuse and approves the absence) and unapproved absences or AWOL's. As can be seen from the description on pages 2–3, the myriad absences for which plaintiff had earlier been disciplined

had included both types, the majority, however, having been approved unscheduled absences.

2. In reversing the presiding official, the MSPB mentioned that the official had erred in sua sponte relitigating the merits of the past disciplinary actions. Plaintiff contends it is the MSPB which erred because applicable review procedures set forth in the Federal Personnel Manual mandate review of the earlier disciplinary actions. We need not resolve this dispute

that regardless of whether plaintiff should or should not have received all or some of the earlier suspensions, the past disciplinary record evidenced poor attendance. The presiding official found, however, that most of the absences had been due to plaintiff's back problems and wife's hospitalization (during which plaintiff had had to care for his young child) and thus had been beyond his control. Accepting plaintiff's testimony that his back condition was now under control and that his wife was recovered, the presiding official concluded the cause for most of the absences had been eliminated and plaintiff's attendance would improve. While noting that plaintiff's record contained a not insignificant number of AWOL's, the presiding official rejected the Postal Service's argument that as suspension had been tried earlier yet the AWOL's had continued, dismissal was appropriate. The presiding official first noted the Postal Service was required to inform an employee of unacceptable behavior and attempt correction through measures short of dismissal. He then reasoned that because the Postal Service had failed to distinguish in the past between approved and disapproved unscheduled absences as a basis for discipline, "[t]he clear signal sent to [plaintiff] was that the Postal Service really did not have any concern about the reason why an employee was absent." The past disciplinary actions, therefore, with the exception of the March 1979 suspension (which had been for an AWOL), could not properly be considered attempts to correct plaintiff's failure to provide acceptable evidence to support unscheduled absences.[3] The presiding official felt a 14 day suspension would suffice and concluded the agency had failed to

prove by a preponderance of the evidence that dismissal was necessary to promote the efficiency of the service. Since 5 U.S.C. § 7701(c) requires that the decision of the agency can be sustained only if it is supported by a preponderance of the evidence, the presiding official determined that the agency's decision could not stand.

The MSPB did not review the presiding official's factual findings. Rather, the MSPB, referring to its opinion in *Douglas v. Veterans Administration,* No. ATO75299006 (1981) where the MSPB had exhaustively discussed its standard of review of penalty determinations, ruled "the preponderance of the evidence standard of proof [is] inapposite in evaluating the rationality of agency-imposed penalties, a decision reached through the exercise of judgment and discretion." Having recognized in *Douglas* that "[m]anagement of the federal work force and maintenance of discipline among its members [was] not the Board's function," the MSPB concluded review of penalty determination was to be "exercised with appropriate deference to the primary discretion ... entrusted to agency management ...." The Board therefore concluded review of penalties was limited to determining whether the agency "responsibly balance[d] the relevant factors in the particular case ... and struck ... a balance within tolerable limits of reasonableness." The MSPB then identified the relevant factors in the instant case as the nature and seriousness of the offense, plaintiff's past disciplinary record, plaintiff's job performance, the presence or absence of prior warnings, the potential for rehabilitation, and any mitigating circumstances. Stating that AWOL is a serious offense which by its

because none of the relevant basic facts were controverted: plaintiff did not deny he had been absent on all the occasions enunciated or contend the earlier AWOL's had been incorrectly imposed. Thus, the significance of plaintiff's record was in showing his poor attendance, and the merits of the earlier disciplinary actions—whether plaintiff should or should not have been disciplined for taking approved leave—were beside the point.

**3.** Witnesses for the Postal Service testified, and plaintiff admitted, that plaintiff had been

warned and counseled on a number of occasions to improve his attendance. That the Postal Service considered both those absences due to illness and those for which no substantiation was provided troublesome is an insufficient basis for concluding, as the presiding official apparently did, that an employee could reasonably believe it pointless to avoid AWOL's; rather, the employee might also reasonably have concluded he should make every effort to avoid both types of absences.

very nature disrupts the efficiency of the service, noting plaintiff's record which included a number of other AWOL's and the past warnings to plaintiff, and concluding the foregoing outweighed plaintiff's claim of satisfactory job performance and plaintiff's contention that as his back problem was under control and his wife was recovered[4] his attendance henceforth would be good, the MSPB concluded removal was not unreasonable and upheld the Postal Service's decision to terminate plaintiff's employment.

Plaintiff argues that 5 U.S.C. § 7701(c)(1)(B) mandates a preponderance of the evidence standard of review of the penalty determination and that since the MSPB refused to utilize said standard, its decision was "obtained without procedures required by law" within the meaning of the judicial review provision, 5 U.S.C. § 7703(c)(2),[5] and hence should be set aside.

We conclude that the MSPB did not apply an incorrect standard of review of the Postal Service's penalty determination. Under 5 U.S.C. § 7513, an employing agency may take a major disciplinary action against an employee:

"(a) . . . only for such causes as will promote the efficiency of the service.

. . . .

(d) An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title."

5 U.S.C. § 7701 provides that:

"(c)(1) . . . [T]he decision of the agency shall be sustained . . . only if the agency's decision—

. . . .

(B) . . . is supported by a preponderance of the evidence."

It is undisputed that an agency's decision that certain employee actions warrant discipline is subject to the preponderance of the evidence standard set out in § 7701(c). Nothing in § 7513, however, requires that the precise action taken by the agency be necessary to promote the efficiency of the service.[6] Nor does either section of the statute suggest that a penalty decision is one which can or should be reviewable under a preponderance of the evidence standard.[7]

**4.** Plaintiff, citing *Rolles v. Civil Service Commission,* 512 F.2d 1319 (D.C.Cir.1975), contends he could not properly be discharged for absences which were due to factors beyond his control such as sickness. *Rolles,* involving a specific Air Force regulation which provided that technicians who failed to meet their obligation of active membership for reasons within their control would be separated, *id.* at 1325, does not support the broad position plaintiff advances. It need not be decided whether an employee who had recovered from an illness and was able to perform his duties could be discharged for absences based solely on said illness, for that is not this case since a significant number of plaintiff's absences were not due to illness.

**5.** Section 7703(c) reads, in material part,
"[T]he court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—
(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(2) obtained without procedures required by law, rule, or regulation having been followed; or
(3) unsupported by substantial evidence. . . ."

**6.** The presiding officer separated the agency's decision into two components—whether the employee was guilty of the wrongdoing charged, and what penalty should be imposed for that wrongdoing. In fact, there appear to be three components to the agency's decision, the third being whether the employee's wrongdoing sufficiently impaired the efficiency of the service to satisfy § 7513. *See Phillips v. Bergland,* 586 F.2d 1007 (4th Cir.1978). Although the appropriateness of the penalty imposed for disciplinary infractions is certainly an important component of the agency's determination, it is not specifically addressed by § 7513 and, in contrast to the other two components, is more susceptible to an abuse of discretion standard for disproportionality than to a preponderance of the evidence review of the facts. *See Young v. Hampton,* 568 F.2d 1253, 1264 and n. 12 (7th Cir.1977); *Boyce v. United States,* 543 F.2d 1290, 1292 (Ct.Cl.1976).

**7.** In the present case, the presiding official went to great lengths in attempting to transform a basically judgmental decision into a factual one. At base, the presiding official's approach seems to rest on the assumption that in order to satisfy 5 U.S.C. § 7513(a) the least severe penalty which is likely to bring about

§ 7701(c) was added to the statute by the Civil Service Reform Act of 1978. Prior to that Act, it was "well established that the penalty for employee misconduct is a matter usually left to the sound discretion of the executive agency." *Boyce v. United States,* 543 F.2d 1290, 1292 (Ct.Cl.1976). *See also Alers v. United States,* 633 F.2d 559, 562 (Ct.Cl.1980); *Hoover v. United States,* 513 F.2d 603 (Ct.Cl.1975). The agency's decision would be reversed only where the punishment exceeded the range of sanctions permitted by the statute or was so harsh that it amounted to an abuse of discretion. *See Boyce v. United States, supra,* 543 F.2d at 1292; *Young v. Hampton,* 568 F.2d 1253, 1269 (7th Cir.1977). We see nothing in the Act that suggests that Congress intended to alter that rule. To the contrary, the legislative history of the Act supports our decision that penalty determinations are judgment calls that should be left to the discretion of the employing agency. In enacting the Civil Service Reform Act of 1978, Congress expressed its concern with the inefficiency wrought by antiquated management practices:

> "[T]he public ... suffers from a system which neither permits management to manage nor which provides assurance against political abuse ... The opportunity for more effective ... service to the public is denied by a system so tortuous that managers regard it as almost impossible to remove those who are not performing."

S.Rep. No. 95–969, 95th Cong., 2d Sess. 3, *reprinted in* [1978] U.S.Code Cong. & Ad. News 2723, 2725 (quoting from Final Staff Report). It defined a central task of the reform bill as "[a]llow[ing] civil servants to be able to be hired and fired more easily,

but for the right reasons," S.Rep. No. 95–969 at 4; [1978] U.S.Code Cong. & Ad.News at 2726, and identified decentralization as an efficient means of "allowing the decision-making process to work at the level where decisions are most effectively made," S.Rep. No. 95–969 at 6; [1978] U.S.Code Cong. & Ad.News at 2728. In enacting the standards that govern MSPB review of agency disciplinary action, Congress was concerned that the agency decision be given sufficient weight, S.Rep. No. 95–969 at 54; [1978] U.S.Code Cong. & Ad.News at 2776, and "intended that the overall effect of the new standards will be fewer reversals by the Board or the courts of adverse actions taken by the agencies," S.Rep. No. 95–969 at 55; [1978] U.S.Code Cong. & Ad.News at 2777.

The dual objective of "increas[ing] the procedural protections afforded employees, while also protecting the right of agencies to be able to maintain the most efficient workforce possible," S.Rep. No. 95–969 at 46; [1978] U.S.Code Cong. & Ad.News at 2768, is well served by applying the preponderance of the evidence standard to the factual determination whether or not the employee committed acts warranting discipline, but leaving to the agency's discretion the judgment of what penalty should be imposed. In that manner, the MSPB, a neutral adjudicative body, determines whether the employee is guilty of the charged conduct, thus guarding against political abuse and safeguarding merit principles. Once the charges are sustained, however, efficient management is served by allowing the agency, within broad limits, to assess the severity of the penalty necessary, for instance, to deter extensive tardiness or

---

employee behavior modification must be identified as a factual matter and only that penalty imposed, any more severe penalty being overkill and thus unnecessary to "promote the efficiency of the service." This is not a necessary reading of § 7513(a), for both the discharge of an unreliable employee (and replacement by a reliable one) as well as correction of said employee's behavior will result in increased efficiency to the service. Moreover, while theoretically it might be desirable that the least severe but effective punishment be identified and im-

posed, as a matter of practicality such a determination is, within broad limits, at best a matter of prediction or judgment. Therefore, to treat the matter as one of fact to be determined under the preponderance of the evidence standard is to render the MSPB, or its agent, rather than the employing agency, the primary determiner and thus to interfere substantially with the employing agency's ability to manage efficiently its work force, a result, for reasons explained *infra,* not consonant with legislative history.

absenteeism. To interpret § 7701(c)(1)(B) as does plaintiff would be to go far in the direction of stripping the employing agency of the type of managerial authority Congress intended it have, for under a preponderance standard, a standard ordinarily used for determining facts, the MSPB, rather than the employing agency, would be the primary decision maker. The decision of the MSPB, therefore, is not "arbitrary, capricious, an abuse of discretion, or not in accordance with law", nor was it "obtained without procedures required by law", 5 U.S.C. § 7703(c)(1), (2).

*Affirmed.*