**SUPER EXCAVATORS, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent.**

**Secretary of Labor, Party-Respondent.**

**No. 80–2318.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1981.

Decided Dec. 31, 1981.*

Certiorari Denied June 21, 1982.
See 102 S.Ct. 2958.

* This appeal was originally decided by an unpublished order on December 31, 1981, pursuant to Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

Mark M. Camp, Wauwatosa, Wis., for petitioner.

Dennis Kade, U.S. Dept. of Labor, Washington, D.C., for party-respondent.

Before SPRECHER and BAUER, Circuit Judges, and ROSZKOWSKI, District Judge.**

PER CURIAM.

The Occupational Safety and Health Administration (OSHA) issued a citation on April 16, 1979, charging petitioner Super Excavators, Inc., with violating provisions of the Occupational Safety and Health Act of 1970 (Act)[1] and regulations thereunder[2] that govern safety requirements for trenches. After a hearing an Administrative Law Judge (ALJ) agreed with OSHA and found a violation. The Occupational Safety and Health Review Commission (Commission) denied discretionary review, issued a final order finding a violation, and imposed a $1440.00 penalty. Pursuant to 29 U.S.C. § 660(a), petitioner seeks review of the Commission's decision. We affirm.

I

OSHA compliance officer John R. Godfrey inspected a trench petitioner was digging as part of a municipal sewer project. Godfrey's experience and expertise in trench inspection were decidedly limited: he lacked formal training in engineering[3] and had previously inspected only three or four trenches other than petitioner's. Despite these handicaps, Godfrey concluded that pe-

---

** The Honorable Stanley J. Roszkowski, Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. Section 5(a)(2) of the Act, 29 U.S.C. § 654(a)(2), requires that each employer "shall comply with occupational safety and health standards promulgated under this Act." Section 17(a), 29 U.S.C. § 666(a), provides a civil penalty of up to $10,000 for a repeated violation of the Act.

2. 29 CFR 1926.652(b) provides:
   Sides of trenches in unstable or soft material, 5 feet or more in depth, shall be sheeted, braced, sloped, or otherwise supported by

means of sufficient strength to protect the employees working within them. See Tables P–1, P–2 (following paragraph (g) of this section). [Table P–1 recommends a 45-degree angle of repose for average soils.]
   29 CFR 1926.653(q) defines unstable soil as [e]arth material, other than running, that because of its nature or the influence of related conditions, cannot be depended upon to remain in place without extra support, such as would be furnished by a system of shoring.

3. Godfrey's only training was eighteen weeks of various courses taught by OSHA, only one of which dealt with trench construction.

titioner's trench posed a serious cave-in hazard, in violation of OSHA regulations, because he observed small particles of sand sloughing off the top of the trench. Godfrey did not measure the slope of the trench's sides nor did he know whether the trench was in clay, which is cohesive and unlikely to collapse, or sand, which is unstable and given to collapse. Indeed, after conducting a walk around inspection, Godfrey was unsure whether an offense even existed, because he "wasn't really qualified to make this evaluation." Tr. at 62. Nevertheless, nearly two weeks after the inspection, a citation issued against petitioner.

During the administrative hearing, the government's evidence consisted of testimony by Godfrey, outlined above, and by Dr. William T. Painter, president of a company specializing in soil mechanics and foundation engineering. Painter, who never visited the trench site, testified that the trench's angulation was too steep and that its soil consistency was unstable. He based his expert opinion, in part, on a soil sample produced from a test boring taken 100 feet from the location designated in the OSHA citation. Although the boring could accurately illustrate soil composition if drilled within a few feet of the actual site, Painter admitted that subsoil could vary greatly along the length of a trench, thereby casting doubt upon the relevancy of the test boring. He did indicate, however, that his opinion was also based on other factors, such as the type of soil revealed in pictures taken by Godfrey, the moisture in the ground that would normally thaw during late March, and the rapid trench-wall collapse falling rain would cause.

Petitioner, on the other hand, produced a number of witnesses who testified that the trenching operation was completely safe. For the most part they were engineers, experienced employees, or both. Among other things, these witnesses pointed out that the heavy weight of the trucks and backhoe working the site caused no significant dirt slippage, nor did these vehicles sink into the ground, thereby evidencing the subsoil's strong support. Similarly, routine tests and inspections by petitioner's witnesses demonstrated that the ground was mainly composed of cohesive, solid clay. The ALJ, however, accepted Painter's opinion over those rendered by petitioner's witnesses and, as a result, concluded that the trench soil was "average," meaning unstable. Therefore, the ALJ found a violation of 29 C.F.R. 1926.652(b).

II

Petitioner claims that the record, considered as a whole, does not present substantial evidence to support the Commission's findings. In addition, petitioner argues that a violation can be found only if the trench posed a significant risk of harm in the workplace. We disagree with both contentions.

■ Given the conflicting expert opinions, we can understand petitioner's disenchantment with the decisions of the ALJ and the Commission. Were we the trier of fact in this case, we doubt very much whether we would have believed Painter's opinion, based largely on photographs and conjecture, over the opinions of petitioner's witnesses, all of whom were at the site daily. But our role is more limited. "We clearly may not substitute our judgment for that of the [Commission]." *International Harvester Co. v. OSHRC*, 628 F.2d 982, 987 (7th Cir. 1980). The Commission's findings of fact, if supported by substantial evidence on the record considered as a whole, are conclusive. *See* 29 U.S.C. § 660(a); *International Harvester*, 628 F.2d at 986.

■ The present case turned upon a close question of credibility, and we are not at liberty to overturn credibility resolutions unless they are contradicted by "uncontrovertible documentary evidence or physical facts." *International Harvester*, 628 F.2d at 986, *quoting Olin Construction Co. v. OSHRC*, 525 F.2d 464, 467 (2d Cir. 1975). No such documentary evidence or physical facts are present here, just differing expert opinions. Therefore, in light of Painter's testimony, we conclude that the evidence supporting the Commission's decision,

though far from overwhelming, is substantial.

Petitioner's second argument, that the Commission's decision must be reversed because it contains no finding that petitioner's employees faced a "significant risk" of harm while in the trench, is also without merit. Petitioner's authority for this proposition is *Industrial Union Dept. v. American Petroleum Institute*, 448 U.S. 607, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980). That decision, however, is inapposite. The Supreme Court in *Industrial Union* was concerned that Congress might have unconstitutionally delegated legislative power to the Secretary of Labor by granting the Secretary sweeping authority to set permanent health standards under section 6(b)(5) of the Act, 29 U.S.C. § 655(b)(5). To limit the Secretary's power, the Court construed section 6(b)(5) as implicitly requiring the Secretary to make a threshold finding that significant occupational risks are present before promulgating any permanent health standard. 448 U.S. at 642, 100 S.Ct. at 2864. Thus, *Industrial Union* chiefly examined the scope of the Secretary's rulemaking authority under section 6(b)(5). In this case, however, petitioner challenges the standard governing the Secretary's enforcement power under section 6(a) of the Act, not the Secretary's rulemaking authority under section 6(b)(5). Clearly, then, *Industrial Union* is not controlling.

To state a prima facie violation of the Act, the Secretary need only prove a regulatory standard and its violation, where the standard is specific. *Greyhound Lines-West v. Marshall*, 575 F.2d 759, 762 (9th Cir. 1978). 29 C.F.R. 1926.652(b), which sets out proper trench dimensions and requires bracing or other supports to prevent cave-ins, is quite specific. Dr. Painter's testimony provided proof of the violation. Therefore, the Secretary established a prima facie case.

Petitioner's final argument is that the trench standards under 29 C.F.R. 1926.-652(b) are vague. We disagree. Petitioner principally relies on workshop materials that criticize 29 C.F.R. 1926.652(b), but these materials are designated "not for reference or publication." Since the workshop materials obviously are not published regulations, we attach no significance to them. The challenged regulation lists trench measurements and incorporates various tables recommending appropriate trench slope inclination. In addition, 29 C.F.R. 1926.653(q) defines "unstable soil." The standards, therefore, are not vague.

### III

We have considered petitioner's remaining arguments and find them without merit. Accordingly, the Commission's decision is

AFFIRMED.