**INTERSTATE ERECTORS, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Robert B. Reich, Secretary of Labor, Respondents.**

No. 94–9556.

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1996.

Darrel J. Bostwick (Jeffery R. Price with him, on the brief), of Walstad & Babcock, Salt Lake City, Utah, for Petitioner.

Edward O. Falkowski, United States Department of Labor (Thomas S. Williamson, Jr., Joseph M. Woodward, Ann Rosenthal, with him, on the brief), Washington, DC, for Respondents.

Before EBEL and McKAY, Circuit Judges, and COOK, Senior District Judge.*

* Honorable H. Dale Cook, Senior United States District Judge for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

1. Section 1926.105(a) provides:
   Safety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines or safety belts is impractical.

2. Section 1926.750(b)(1) states in pertinent part:

H. DALE COOK, Senior District Judge.

Interstate Erectors, Inc. ("Interstate") seeks review of the determination of an Occupational Safety and Health Review Commission ("the Commission") administrative law judge ("ALJ") that Interstate willfully violated two safety standards under the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678. Specifically, Interstate was cited for willful violations of: (1) 29 C.F.R. § 1926.105(a)[1] for failure to use practical methods to protect employees from falling off roof beams to the exterior of a building under construction where the workplace was more than 25 feet above the ground, and (2) 29 C.F.R. § 1926.750(b)[2] for failure to either maintain solid decking on the first floor or to provide any other form of fall protection for employees working on roof beams where the potential fall distance exceeded 25 feet. The ALJ ordered Interstate to pay civil penalties totalling $63,000. The ALJ's decision became a final order of the Commission when the Commission denied Interstate's petition for discretionary review. 29 U.S.C. § 661(j). This Court has jurisdiction pursuant to 29 U.S.C. § 660(a).

The issues raised on appeal concern, 1) whether the Occupational Safety and Health Administration ("OSHA") properly interpreted §§ 1926.105(a) and 1926.750(b) to require Interstate to employ fall protection devices at all times when practical to do so; 2) whether substantial evidence supports the Commission's finding that Interstate's violations of §§ 1926.105(a) and 1926.750(b) were willful; and 3) whether the Commission abused its discretion in assessing penalties of $28,000 and $35,000, respectively, for the two violations.

*Temporary flooring—skeleton steel construction in tiered buildings.*
(1)(i) The derrick or erection floor shall be solidly planked or decked over its entire surface except for access openings. Planking ... shall be laid tight and secured to prevent movement.
(ii) On buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25 feet.

## BACKGROUND

Interstate Erectors, a Utah corporation, is a steel erection business owned and operated by Lynn, Robert, and John Clayburn. Incorporated in February of 1991, Interstate is the Clayburns' third business venture in the construction industry. The Clayburns have been engaged in the ironworking business since the early 1970's, when John formed Clayburn, Inc.

Clayburn, Inc. became bankrupt and was dissolved in 1984 following an accident in which an employee was killed in a fall. As a result of the accident, Clayburn, Inc. was cited for fall protection violations. The company was also cited for similar violations on several previous occasions.

Upon the dissolution of Clayburn, Inc., the Clayburns formed CCC & T, which was similarly cited several times for fall protection violations. Following an incident in 1991 in which an employee injured himself in a fall, the Utah Occupational Safety and Health Division ("Utah OSH") issued a repeat fall protection citation to CCC & T. As part of a settlement agreement with Utah OSH, CCC & T arranged to have all its employees, including management, attend a training session in May of 1991. Interstate's foreman also attended. The training included explanations of OSHA's fall protection standards as contained in §§ 1926.105 and 1926.750. The need for 100 percent fall protection was also mentioned.

In November of 1991, a CCC & T employee was involved in a fatal fall. In response, OSHA issued a citation alleging that CCC & T willfully violated § 1926.105(a). CCC & T entered into a settlement agreement, admitting the allegations. CCC & T was assessed a penalty of $24,000. CCC & T transferred its assets to Interstate in 1993.

During meetings with Lynn and Robert Clayburn and Interstate's foreman in 1991 and 1992, OSHA explained its position with respect to the fall protection rules. OSHA informed the Clayburns that fall protection had to be supplied 100 percent of the time at heights over 25 feet. OSHA further informed the Clayburns that this requirement included employees moving along beams. OSHA additionally explained various methods of acceptable fall protection.

On February 9, 1993, OSHA Compliance Officer, David Mahlum, visited a construction site where Interstate was erecting steel framework for a three-story building in Idaho Falls, Idaho. Mahlum observed two men working on the structure. The men were in view of the foreman. Although the roof was 42 feet above the ground, neither employee was secured to a fall protection device. The temperature was below freezing, and ice had formed on the beams. Mahlum witnessed one employee walking along an interior roof beam with no fall protection.

Mahlum observed open holes beneath the employees in the interior of the building. These holes allowed for a 42 foot drop; the likely result of such a fall would be death. Mahlum estimated that 35 to 40 percent of the floor was uncovered. These holes were also in view of the foreman.

The employees stated that the foreman told them to "coon" [3] the beams when moving about on the steel and tie off with a lanyard when they arrived at a stationary point. Mahlum testified that a catenary line, which was available at the site, would have provided adequate fall protection. Although the catenary line was feasible to install, the foreman concluded that the line was not necessary. The catenary line was, however, installed the day after the inspection, and the holes were covered.

Lynn Clayburn testified that he knew of OSHA's interpretation of the fall protection standards and understood that OSHA requires 100 percent fall protection for employees working at heights over 25 feet. Clayburn stated, however, that since the standards do not specifically require 100 percent fall protection, he believed that OSHA's interpretation was incorrect. Clayburn further testified that the catenary line was not installed at the Idaho Falls site because he believed that belts and lanyards were adequate for stationary work, and alternative methods, such as "cooning," provided suffi-

---

3. To "coon" an I-beam is to walk on its lower flange with the upper flange between the legs.

cient protection when moving about the beams.

OSHA originally issued seven citations to Interstate as a result of Mahlum's inspection. Five of the citations were settled by the parties. The two remaining citations alleged that Interstate willfully violated 29 C.F.R. § 1926.105(a) by failing to protect employees from exterior falls of more than 25 feet from the roof framework of a building under construction, and that it willfully violated 29 C.F.R. § 1926.750(b)(1) by failing to protect employees from falls into the interior of the building. OSHA proposed maximum penalties of $70,000 per violation, for a total of $140,000. Interstate contested the citation, and a hearing was held before the ALJ in February of 1994.

In a decision rendered in May of 1994, the ALJ found that Interstate violated § 1926.105(a) by allowing an employee to be exposed to a fall of more than 25 feet "while accessing his work area on an exterior beam." The judge held that the Secretary could prove a prima facia case under the standard by demonstrating that safety belts and lanyards were not used where practical.

The ALJ additionally found that Interstate violated § 1926.750(b)(1) because both of Interstate's employees at the Idaho Falls job site were allowed to work directly above large holes, thereby exposing them to a drop of 42 feet. The judge found that such holes were not "access openings" within the meaning of the standard, as they "clearly exceeded" that particular exception.

The ALJ further concluded that Interstate willfully violated § 1926.105(a). The judge found that although Interstate's management knew that OSHA took the position that 100 percent fall protection is required at heights over 25 feet, Interstate chose to substitute its own judgement as to the requirements of the standard. The judge also found that Interstate willfully violated § 1926.750(b)(1) because Interstate evinced a complete lack of concern that its conduct violated OSHA's fall protection standards.

The ALJ thus affirmed both citation items, but reduced the total amount of the proposed penalties to $28,000 and $35,000, for a total of $63,000, citing OSHA's failure to take into account all of the pertinent factors as required under the Act. Specifically, the judge determined that the size of Interstate's business warranted the imposition of a lesser penalty.

## DISCUSSION

■■■ With respect to our standard of review, 29 U.S.C. § 660(a) mandates that the "findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." Additionally, the Commission's legal conclusions will generally be upheld if found not to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C § 706(2)(A). Likewise, OSHA's interpretations of its regulations are entitled to deference. *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991).

■■■ The essence of Interstate's petition centers upon whether Interstate can comply with § 1926.105(a) by having its employees use one of the specified fall protection methods only a portion of the time that such use is practical. Interstate maintains that use of fall devices for a substantial portion of the workday satisfies the above standards and that use of such devices during 100 percent of the time that it is practical to do so is not required under the law. We find Interstate's contentions on this point to be without merit.

In *Southern Colorado Prestress v. OSHRC*, 586 F.2d 1342 (10th Cir.1978), this Court was called upon to determine whether an employer violates § 1926.105(a) by failing to employ safety nets when other means of fall protection are not utilized. We held that, regardless of the practicality of other devices, the standard requires the use of safety nets when other devices are not used.

Interstate contends that *Southern Colorado Prestress* stands for the proposition that if no fall protection device is used at all during the workday, then a violation of the fall protection standards has occurred. Interstate maintains, however, that it is perfectly consistent with our decision in *Southern Col-*

*orado Prestress* to require OSHA to prove that construction workers are not secured to a fall protection device during a substantial portion of the workday before a violation of the standards may be found.

Interstate misconstrues the necessary implication of *Southern Colorado Prestress.* In deciding that the employer violated § 1926.105(a) because its employees were not using any form of fall protection whatsoever, so that nets were required, we said,

> it [is] only reasonable that [§ 1926.105(a)] contemplates that *one* of the listed safety devices will be used when the described danger of height is involved.... From this premise the standard is simply laying down the requirement of one designated safety device—nets—if others are impractical and therefore not used. Furthermore, the standard is not intended to point out escape routes by which *no* device need be used if one of the alternative devices can be shown to be practical even though not in fact used. (emphasis in original). *Id.* at 1350.

The clear implication and logical extension of our reasoning in *Southern Colorado Prestress* is that the standard requires an employer to use one of the listed safety devices at all times when employees are exposed to heights above 25 feet. When we said that the standard "contemplates that *one* of the listed safety devices will be used when the described danger of height is involved," we did not qualify this to mean that the standard only requires employers to utilize fall protection devices during a substantial portion of the day, while permitting employees to be exposed to fall hazards during other times. To add such a qualification would serve to warp the plain language of *Southern Colorado Prestress.*

Interstate places great reliance upon *L.R. Willson & Sons, Inc. v. Donovan,* 685 F.2d 664 (D.C.Cir.1982) (*Willson I*), as support for its argument that the use of protection devices during a substantial portion of the workday is sufficient to satisfy the standard. The court in *Willson I* held that OSHA bears the burden of proving that the use of safety belts and lanyards are impractical so that safety nets are required. The court went on to hold that in order to meet that burden, OSHA must prove that employees cannot use their belts and lanyards during a substantial portion of the workday. *Id.* at 677.

Interstate misapprehends *Willson I.* The court in *Willson I* was faced with the issue of construing the term "impractical" as it is used in § 1926.105(a). Since the court found the term to be ambiguous, it developed the "substantial portion of the workday" test for the sole purpose of determining when a particular safety device becomes "impractical," thereby necessitating the installation of safety nets or other fall protection devices. *Id.* at 675. Hence, the "substantial portion of the workday" test only addresses the limited issue of whether a particular safety device is practical. Notwithstanding Interstate's broad interpretation of *Willson I,* the test does not provide a shield to an employer who fails to use fall protection devices when such devices are, in fact, practical, even if employees are protected most of the day.

Indeed, the D.C.Circuit held in *Century Steel Erectors, Inc. v. Dole,* 888 F.2d 1399, 1402–03 (D.C.Cir.1989), that OSHA may establish a prima facie case under § 1926.105(a) by showing that safety belts were not used where practical. The substantial portion of the workday test was held not to apply in *Century* because the use of safety devices was found to be practical on the occasions that they were not used. *Id.* at 1404. Thus, Interstate's reliance on *Willson I* is misplaced.

■ Interstate also places some reliance on *Secretary of Labor v. Falcon Steel Co., Inc.,* 16 O.S.H.Cas. (BNA) 1179 (1993), as further support for its argument. In particular, Interstate cites the suggestion in *Falcon Steel* that a "fair statement of industry practice and custom on safety belts ... is that ironworkers move freely about enroute from one location to another, but that they tie off when stationary." *Id.* at 1193. The ALJ, however, correctly noted that where the practicality of a safety device is clearly demonstrated in a given case, industry practice is irrelevant.

■ Interstate also contends that "cooning" the beams was an adequate fall protec-

tion method, which satisfied the standard. As the ALJ found, "cooning" is not enumerated in the standard as an approved method of fall protection. Thus, we agree with the ALJ that Interstate may not implement an alternative measure of protection in place of those specified.

Interstate admits that § 1926.105(a) is applicable to exterior falls to which its employees may have been exposed at its Idaho Falls worksite. The evidence presented at the hearing clearly shows that one of Interstate's employees was in fact exposed to a fall hazard while on an exterior beam. Interstate does not dispute the fact that the use of approved safety devices was practical throughout the workday. The ALJ found that the use of a "catenary line on the structure's perimeter was practical, in that such a line was available, feasible, and was installed the day following the OSHA inspection." The ALJ further found that "[i]nstallation of a catenary line would have afforded ironworkers a means of tying off while moving about the steel, thus providing 100% fall protection."

OSHA interprets § 1926.105(a) to require the use of appropriate safety devices 100 percent of the time that such use is practical. OSHA therefore maintains that an employer violates § 1926.105(a) by failing to use appropriate safety devices at any time it is practical to do so. The ALJ determined that the Secretary's interpretation of the standard is the only reasonable interpretation. We will not disturb the ALJ's findings in this matter. We therefore foreclose any perceived ambiguity contained in *Southern Colorado Prestress* and hold that the failure to provide approved fall protection devices during all times in which the described danger of height is involved constitutes a violation of § 1926.105(a), unless the defenses of "impossibility" or "greater hazard" are established.[4]

■ With respect to the citation issued pursuant to § 1926.750(b), Interstate apparently asserts the same defense as it did in response to the § 1926.105(a) violation. That is, Interstate places great reliance upon the

substantial portion of the workday test by arguing that OSHA failed to establish that Interstate's employees were not protected during a substantial portion of the workday. Again, Interstate misconstrues the substantial portion of the workday test to mean something which was never intended. It is therefore clear that Interstate's argument is wholly unsupported, and its contentions can be quickly dismissed.

Sections 1926.750(b) and 1926.105(a) are not identical standards and cannot therefore be interpreted in a like manner. Without qualification, § 1926.750(b)(1) requires certain fall protection measures to be employed. Specifically, solid decking must be installed within two floors below a work area. On structures not adaptable to temporary floors, the employer must install either scaffolds or safety nets whenever employees work at heights over 25 feet. Moreover, since § 1926.750(b) does not mention the term "impractical," the substantial portion of the workday test cannot apply to that standard. As noted above, the substantial portion of the workday test was developed for the sole purpose of determining the point at which a particular fall protection device becomes "impractical," as that word is used in § 1926.105(a). Hence, that particular test is germane only to a § 1926.105(a) inquiry. Additionally, whereas § 1926.105(a) applies to exterior fall protection, § 1926.750(b) is designed to protect against interior falls. See, e.g., *Willson I* (§ 1926.750(b)(1) specifies only measures for interior fall protection while § 1926.105(a) provides the only standard for exterior fall protection).

The record shows that two Interstate employees were allowed to "coon" the beams directly above large holes in the uncompleted first floor decking, thereby exposing themselves to interior fall hazards of 42 feet. Further, the employees and the openings were in plain view of the foreman. Substantial evidence supports the ALJ's finding that these holes "clearly exceeded" the exception provided for access openings. Since the record indicates that none of the required fall

---

4. For a discussion concerning the defenses of "impossibility" and "greater hazard," see *South-* *ern Colorado Prestress,* 586 F.2d at 1351.

protection measures were in place, we will not disturb the ALJ's determination that Interstate violated § 1926.750(b)(1)(ii).

The ALJ additionally found that Interstate "willfully" violated the above standards, thus allowing for the imposition of greater penalties. In defining behavior which rises to the level of willfulness, we have said that,

> The failure to comply with a safety standard under the Occupational Safety and Health Act is willful if done knowingly and purposely by an employer who, having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirement. An omission or failure to act is willfully done if done voluntarily and intentionally.

*Kent Nowlin Const. Co. v. OSHRC,* 593 F.2d 368, 372 (10th Cir.1979) (quoting *United States v. Dye Const. Co.,* 510 F.2d 78 (10th Cir.1975)).

■ Interstate contends that even if violations occurred, such violations were "serious" at most. Interstate points to commendations received from Utah OSH in recognition of Interstate's compliance with safety regulations, including fall protection requirements. Interstate further maintains that employees had safety belts and lanyards and were instructed to use them whenever practical; the employees only untied when moving between work points. Additionally, Interstate claims that the ALJ made no finding of a repeat violation, and that this case does not demonstrate disregard or indifference to the safety of employees. Finally, Interstate argues that the standards at issue were ambiguous, and therefore Interstate properly relied upon industry practice of not requiring 100 percent fall protection.

The record indicates that Interstate's management was told numerous times by OSHA officials that fall protection is required whenever practical. Furthermore, the record reveals that these same managers of Interstate had been cited by OSHA in the past for failure to maintain adequate fall protection measures, and that fatal accidents resulted from such violations. The fact that such citations and reprimands were made upon companies other than Interstate and that Interstate previously had a "stellar" record is immaterial in this case, since the managers and officers of Interstate were on notice of OSHA's interpretation of the standards at issue. Although it is true that the ALJ made no finding of a repeat violation committed by Interstate, such a showing is not required to demonstrate willfulness. In any event, it is apparent from the record that the officers and managers of Interstate are indeed personally guilty of repeat violations of OSHA's fall protection standards.

The record shows that Interstate's management was amply aware of OSHA's interpretation of the safety standards, requiring 100 percent fall protection at heights over 25 feet. Interstate, however, elected to adopt its own interpretation of the standards, thereby leaving its employees exposed to fall hazards while moving along the beams. In light of Interstate's previous dealings with OSHA on matters similar to the ones surrounding this case, we cannot accept Interstate's argument that it placed a good faith reliance on its own reasonable interpretation of an otherwise ambiguous standard. We therefore uphold the ALJ's determination that Interstate's blatant and continual disregard of OSHA's requirements constitutes a willful violation of the regulations at issue.

■ We turn finally to the issue of the civil penalties imposed upon Interstate. It is well settled that the assessment of penalties is within the sound discretion of the administrative agency. This Court will not therefore disturb the sanctions imposed by an agency unless the punishment exceeds the range of sanctions permitted by law, or the penalty is so harsh that it amounts to an abuse of discretion. *Giesler v. Merit Systems Protection Board,* 686 F.2d 844, 849 (10th Cir.1982) (citing *Boyce v. United States,* 211 Ct.Cl. 57, 543 F.2d 1290, 1292 (1976)). The relevant statute is 29 U.S.C. § 666(a), which reads:

> Any employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $70,000 for each violation, but not less than $5,000 for each willful violation.

Furthermore the "Commission shall have authority to assess all civil penalties provided in

this section, giving due consideration to ... the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations." 29 U.S.C. § 666(j).

Given the history of personal noncompliance by the managers and officers of Interstate, we do not believe that the ALJ abused his discretion in assessing a total of $63,000 in penalties for the two violations. Indeed, previous sanctions do not appear to have deterred Interstate's management from repeating prior violations of the fall protection standards.

The penalties imposed by the ALJ clearly do not exceed the range of sanctions permitted by law, nor are they excessive. The ALJ had the authority to impose a penalty of $70,000 for each violation. After careful consideration, however, the ALJ determined that a lesser penalty would be appropriate in the instant case. We cannot find error in the ALJ's decision, and we therefore conclude that the sanctions imposed were proper and well within the discretion of the ALJ.

AFFIRMED.