**UNION TANK CAR COMPANY, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, Respondent.**

No. 98–2225.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1998.

Decided Sept. 22, 1999.

Robert H. Brown (argued), Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Chicago, IL, for Petitioner.

John Shortall (argued), Department of Labor, Appellate Litigation, Washington, DC; Ray Darling, Jr., Occupational Safety & Health Review Commission, Washington, DC; James E. White, Dallas, TX, for Respondent.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Union Tank Car Company ("Union Tank Car") seeks review of an order by the Occupational Safety and Health Review Commission ("Commission") finding that Union Tank Car had committed a "serious" violation of an Occupational Safety and Health Administration ("OSHA") safety standard which requires the use of body harnesses in confined work spaces and assessing a $1500 penalty. Union Tank Car argues that the order must be set aside because the Commission's determinations were not supported by substantial evidence, its legal conclusions were contrary to law, and the penalty assessment was an abuse of discretion. We deny Union Tank Car's petition for review.

Union Tank Car operates a repair shop for railroad cars in Cleveland, Texas, where its employees regularly enter railroad tank cars to perform their assigned duties. Work in the confined space of the tank cars poses risks of injury due to fire, electrocution, contaminated air supply, falls, and other hazards. To facilitate rescue, therefore, Union Tank Car had since 1980 required employees to wear wrist harnesses or "wristlets" attached to a lifeline so that, if necessary, they could be rescued without requiring a rescuer to enter the tank car. Union Tank Car had an active and effective safety program and a good safety record. During the twelve years prior to the hearing before the ALJ, Union Tank Car was only required to perform two rescue operations from its tank cars, neither of which occurred at the Cleveland, Texas, plant. In both cases, the workers wore wrist harnesses.

In April 1993, after extensive hearings, OSHA adopted a "confined work spaces" standard requiring that, whenever possible, rescues should be performed without entering the confined space. 58 Fed.Reg. 4462, 4465 (1993). Noting that wrist harnesses may expose employees to additional injury in case of a rescue, OSHA also concluded that a chest or full body harness would be the preferred method of retrieval. Wrist harnesses would only be acceptable if the employer could demonstrate that (1) use of a body harness is infeasible or creates a greater hazard and (2) the use of a wrist harness is the safest and most effective alternative. *Id.* at 4479 (*codified at* 29 C.F.R. § 1910.146(k)(3)(i)). Union Tank Car was aware of this standard. The day after its adoption, Union Tank Car revised its confined work space policy, supposedly "to conform with OSHA's recently issued Confined Space Entry Standard." Nevertheless, Union Tank Car continued to require wrist harnesses rather than body harnesses.

In 1996, officers of the employees' local union at the Cleveland, Texas, plant learned that OSHA standards required body harnesses if they were feasible and at least as safe as wrist harnesses. The union informed Union Tank Car of the OSHA standard and requested that Union Tank Car use body harnesses thereafter. After Union Tank Car rejected the union's request, the union filed a complaint with OSHA. An OSHA investigator established that Union Tank Car was not in compliance with the OSHA standard and in April 1996 issued a citation for the "serious violation." The investigator classified the violation as "serious" because the use of wristlets to extract workers could cause severe injuries such as dislocation of the wrist, elbow, or shoulders or other harm to soft tissues, and recommended a penalty of $2,625. Union Tank Car appealed, invoking the jurisdiction of the Commission, *see* 29 U.S.C. § 659(c), but the ALJ affirmed the citation, adjusting the penalty to $1,500 in view of Union Tank Car's good safety policies and record. This order became final on April 6, 1998, thirty days after the Commission declined to review it. *See id.* § 661(j). Union Tank Car then petitioned for review of this final agency decision. *See id.* § 660(a).

In a review of enforcement actions by OSHA, we will affirm the agency's legal determinations as long as these are not arbitrary or capricious and are in accordance with law. *Caterpillar, Inc. v. Occupational Safety and Health Review Comm'n*, 122 F.3d 437, 439–40 (7th Cir. 1997); 5 U.S.C. § 706. We defer to the agency's reasonable interpretations of its own regulations. *In re Establishment Inspection of Caterpillar, Inc.*, 55 F.3d 334, 336 (7th Cir.1995). We affirm findings of fact if supported by substantial evidence. *Caterpillar*, 122 F.3d at 440; 29 U.S.C. § 660(a) ("The findings of the Commission with respect to questions of fact [under the Occupational Safety and Health Act (the "Act") ], if supported by substantial evidence on the record considered as a whole, shall be conclusive."). The ALJ's credibility determinations must be honored by a reviewing court unless these determinations are contradicted by "uncontrovertible [documentary or physical] evidence." *Faultless Division, Bliss & Laughlin Industries, Inc. v. Secretary of Labor*, 674 F.2d 1177, 1182 (7th Cir.1982); *see also J.C. Penney Co., Inc. v. National Labor Relations Board*, 123 F.3d 988, 995 (7th Cir.1997) (labor law context); *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (deference due credibility determinations of district court). We review a penalty assessment for abuse of discretion. *Interstate Erectors, Inc. v. Occupational Safety and Health Review Comm'n*, 74 F.3d 223, 229 (10th Cir.1996); *Zemon Concrete Corp. v. Occupational Safety and Health Review Comm'n*, 683 F.2d 176, 181 (7th Cir.1982).

We first consider whether Union Tank Car had violated the OSHA standard in using wristlets rather than body harnesses. The standard states:

(3) To facilitate non-entry rescue, retrieval systems or methods shall be used whenever an authorized entrant enters a permit space, unless the retrieval equipment would increase the overall risk of entry or would not contribute to the rescue of the entrant. Retrieval systems shall meet the following requirements.

(i) Each authorized entrant shall use a chest or full body harness, with a retrieval line attached at the center of the entrant's back near shoulder level, above the entrant's head, or at another point which the employer can establish presents a profile small enough for the successful removal of the entrant. Wristlets may be used in lieu of the chest or full body harness if the employer can demonstrate that the use of a chest or full body harness is infeasible or creates a greater hazard and that the use of wristlets is the safest and most effective alternative.

29 C.F.R. § 1910.146(k). Compliance with the regulation is mandatory. 29 U.S.C. § 654(a)(2) (Employers "shall" comply with OSHA standards.).

Union Tank Car argues first that it did not violate the standard because wristlets are safer than, and therefore may be used in lieu of, body harnesses. The Commission adopted the finding of the ALJ that body harnesses do not "create a greater hazard" and that the use of wristlets is not "the safest and most effective alternative" in the circumstances. In reaching this conclusion, the ALJ credited the testimony of OSHA's expert witness, Michael Roop, over that of Union Tank Car's expert, Alvin Williams. Roop testified that his extensive experience in developing rescue techniques showed that wristlets "hurt[ ] people" and that the rescue industry prefers full body harnesses. Williams testified, in contrast, that wristlets were safer because they allowed an endangered worker to be extracted three to five seconds faster than body harnesses. The ALJ believed Roop in part because Williams lacked expertise in rescue procedures, while Roop had often participated in actual and practice rescues from tank cars and other confined spaces. The ALJ also noted that Union Tank Car had little experi-

ence with rescues and none with body harnesses.

 Union Tank Car contends that the ALJ erred in believing Roop over Williams. In attacking a credibility determination of the ALJ on appeal, Union Tank Car must overcome the great deference we accord the finder of fact, who is in a much better position than we to determine which witness is more believable. To carry this burden requires "uncontrovertible" evidence, *Faultless Division*, 674 F.2d at 1182, which must take the form of documentary evidence or physical facts, *Super Excavators, Inc. v. Occupational Safety and Health Review Comm'n*, 674 F.2d 592, 594 (7th Cir.1981), as long as the testimony accepted by the ALJ is internally consistent or at least reasonably coherent and facially plausible.

Union Tank Car argues that it offered evidence that it had safely used wristlets in a few real and simulated rescues, that Roop himself testified about only one person who had dislocated a shoulder using wristlets in 1983, and that several of Roop's concerns were unsubstantiated. Union Tank Car also alleges that it offered evidence that body harnesses, if not properly worn, pose risks of snagging which might endanger workers in need of rescue. Union Tank Car's evidence, however, is not the incontrovertible physical or documentary evidence required to overcome the ALJ's credibility determinations. Although Union Tank Car claims that credibility is not an issue, what it essentially asks us to do is to reweigh the evidence and believe its expert rather than the agency's. That is not our job. *See, e.g., Anderson*, 470 U.S. at 575, 105 S.Ct. 1504 (trial judge's finding of fact based on crediting one witness over another, when "each ... has told a coherent and facially plausible story that is not contradicted by extrinsic evidence," will almost always be upheld).

 Even setting aside questions of credibility and the heightened deference it involves, Union Tank Car's arguments would not defeat the normal but still great deference accorded the ALJ's factual findings, adopted by the Commission, under ordinary substantial evidence review. There was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Aegerter v. City of Delafield, Wisconsin*, 174 F.3d 886, 889 (7th Cir.1999) (meaning of substantial evidence standard). A reasonable mind might accept as adequate the testimony of an experienced rescue expert that body harnesses were safer than wrist harnesses over the testimony of someone without extensive rescue experience. The record considered as a whole would support that conclusion.

 Union Tank Car's second argument is that the citation should be vacated as applied to employees who are welders, because 29 C.F.R. § 1910.252(b)(4)(iv) is the only OSHA provision that applies to welders and so preempts the general confined work space standards of § 1910.146(k). The Secretary of Labor agrees that welders are not covered by § 1910.146(k). However, Union Tank Car does not dispute that its requested ruling would leave the citation unaffected with respect to employees who are not welders, since, under company policies, all employees who worked in confined work spaces had to use wrist harnesses in certain circumstances whether they were welders or not. Because the standard clearly applied to these other employees, the ALJ declined to reach the issue of whether welders would be covered. The citation was not imposed for Union Tank Car's violation with respect to specific job classifications of employees, but for its violation of the standard with respect to all groups of employees who were covered. That there were covered employees in some job classifications is not disputed. Because, on the record, vacating the citation with respect to welders would make no difference in the outcome, the ALJ's decision was not

arbitrary and capricious or contrary to law.

■ Union Tank Car's final argument is that the ALJ erred in characterizing the violation as "serious" and imposing a penalty. The Commission suggests that Union Tank Car may have waived this point by raising it only in post-hearing briefs which the ALJ directed the parties to file. However, while failure to present an argument to the ALJ does constitute waiver of the right to raise it on appeal, *Secretary of Labor v. Cerro Copper Prods.*, 795 F.2d 25, 26 n. 2 (7th Cir.1986); *Banuelos v. Apfel*, 165 F.3d 1166, 1173 (7th Cir.1999) (Social Security context), this argument was indeed presented to the ALJ at the ALJ's direction. Accordingly the argument was not waived. It is, however, without merit.

A violation is "serious" if there is "substantial probability that a death or serious physical harm could result from ... practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not know without exercise of reasonable diligence, know of the ... violation." 29 U.S.C. § 666(k). The ALJ concluded that while wrist harnesses would avert a substantial probability of death, they did pose a substantial probability of arm dislocations or spinal injury, which would qualify as serious physical injury.

Union Tank Car knew of the conditions constituting the violation, which the Commission construes as sufficient to satisfy the element of knowledge for purposes of a serious violation whether or not Union Tank Car accepts that the condition is hazardous or that a particular legal interpretation applies. As usual, we defer to reasonable agency interpretation of the statutes it administers. *United Transportation Union v. Surface Transportation Board*, 169 F.3d 474, 476 (7th Cir.1999) (*citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); *Anthony Crane Rental, Inc. v. Reich*, 70 F.3d 1298, 1302 (D.C.Cir.1995) ("We defer to the Secretary's interpretation of the Act and regulations ... so long as they are consistent with the statutory language and otherwise reasonable."). Union Tank Car offers no plausible argument that the Commission's interpretation is unreasonable.

■ Union Tank Car's argument that the violation was not serious or that its actions did not constitute a violation because it had a good faith belief that its practices did not pose a substantial probability of serious physical harm is unavailing. Good faith belief that one's policies are safer than those required by OSHA regulations is not a defense to a violation of the regulations. *See, e.g., Reich v. Trinity Industries, Inc.*, 16 F.3d 1149, 1153 (11th Cir.1994).

■ The Commission has authority to assess penalties for violations of the Act and OSHA regulations, "giving due consideration to the appropriateness of the penalty with respect to the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations." 29 U.S.C. § 666(j). The ALJ did not abuse its discretion if it took into account these statutory factors in assessing a penalty. *Zemon Concrete Corp.*, 683 F.2d at 181; *Interstate Erectors, Inc.*, 74 F.3d at 229. In assessing a penalty of $1500, reduced from the $2,625 initially proposed, the ALJ took into account these factors, and particularly Union Tank Car's commendable safety record and programs.

Union Tank Car's petition for review of the Commission's order is therefore DENIED.