In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2427

KS ENERGY SERVICES, LLC,

*Petitioner,*

*v.*

HILDA L. SOLIS, Secretary of Labor,

*Respondent.*

Petition for Review of an Order of
the Occupational Safety and Health Review Commission.
No. 09-1272

ARGUED APRIL 17, 2012—DECIDED DECEMBER 13, 2012

Before BAUER, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. While installing a natural-gas pipeline in Madison, Wisconsin, KS Energy Services, LLC, was cited by the Occupational Safety and Health Administration ("OSHA") for violating trench safety regulations that require companies to protect workers from dangerous cave-ins. After inspecting KS Energy's trench, OSHA issued a citation alleging a repeat violation of 29 C.F.R. § 1926.652(a)(1) for failing to provide an adequate protective system. KS Energy contested the citation, but an ALJ upheld it on two independent grounds:

(1) the soil in KS Energy's trench was classified as "Type B," and therefore the slope of the trench was too steep based on the OSHA inspector's calculations; and (2) KS Energy improperly used the technique of "benching" to configure its trench, violating applicable trenching regulations. The ALJ imposed a monetary penalty for the safety violation. The Occupational Safety and Health Review Commission ("OSHRC") initially directed a review of the ALJ's determination, but later vacated that decision, making the ALJ's determination final. KS Energy petitioned this court for review.

We deny the petition. The parties agree that if the soil in the excavation was properly classified as Type B, the trench was impermissibly steep. Substantial evidence supports the ALJ's determination that the soil was classified as Type B. KS Energy also challenges the ALJ's determination that the trench was improperly configured, arguing that the agency's interpretation of the trenching regulations is unreasonable and unconstitutionally vague. Because the soil-classification decision is an independent ground for the ALJ's decision and adequately supported by the record, we need not address this alternative argument.

## I. Background

KS Energy is based in New Berlin, Wisconsin, and provides excavation, construction, and related technical services to the natural gas, electric, and telecommunications industries. On June 10, 2009, KS Energy was installing a natural-gas pipeline along an 8-to-10-block span of University Avenue, a main thoroughfare in Madison, Wisconsin. Late that afternoon OSHA Compliance Officer

Kimberly Morton arrived at the site and took several measurements of KS Energy's excavation using a trench pole—an engineering rod used to determine the angle of trench slopes. OSHA regulations specify the maximum allowable pitch of a trench slope based on the classification of the soil type in the excavation. Officer Morton took three slope measurements at different locations in the trench yielding angles of 46, 50, and 46 degrees.

Morton also observed several conditions near her measurement sites that could potentially affect the soil classification under OSHA regulations. For example, she noted a small amount of water in several footprints at the base of the trench, raising a concern that the trench soil might be destabilized by the presence of water. She also noticed existing utility lines alongside the excavation, suggesting the possibility that the soil had been previously disturbed, another factor calling for a downgrade in soil type. Finally, Morton noted the potential for destabilizing vibration due to steady automobile traffic along University Avenue and the use of a backhoe alongside the trench. Unsure of whether the construction site was in compliance with OSHA regulations, Morton reported her findings to her supervisor Chad Greenwood, who instructed her to return the following day with Nick Kerkenbush, a more experienced excavation inspector. Morton and Kerkenbush went back to the site on June 11. Kerkenbush took soil samples with a shovel from the side of the trench a few feet down but did not take samples closer to the bottom of the trench.

The point of this inspection was to determine whether KS Energy was in compliance with 29 C.F.R. § 1926.652(a)(1),

which requires construction employers to protect employees in an excavation by using an adequate protective system designed in accordance with subsection (b) or (c) of § 1926.652. Under § 1926.652(b) employers may elect to either slope or "bench[1]" the sides of the excavation at appropriate angles based on soil classifications and other factors.[2] Appendices A and B to Subpart P of § 1926 prescribe the permissible slope angles and configurations for sloping and benching systems. 29 C.F.R. § 1926.652(b)(2). Appendix A explains the various soil classifications that determine the allowable slopes. The soil classifications are listed by cohesiveness in descending order of stability: Stable Rock, Type A, Type B, or Type C. *Id.* § 1926, subpt. P, app. A(b).

The initial soil classification is subject to downgrading based on various factors that affect soil stability and thus employee safety. As pertinent here, Appendix A states:

> [N]o soil [may be classified as] Type A if:
>
> (i) The soil is fissured; or

---

[1]   Sloping is "excavating to form sides of an excavation that are inclined away from the excavation." 29 C.F.R. § 1926.650(b). Benching is "excavating the sides of an excavation to form one or a series of horizontal levels or steps, usually with vertical or near-vertical surfaces between levels." *Id.*

[2]   Under § 1926.652(c) an employer can also fulfill its safety obligations by using supports, shields, or other protective systems.

(ii) The soil is subject to vibration from heavy traffic, pile driving, or similar effects; or

(iii) The soil has been previously disturbed; or

. . . .

(v) The material is subject to other factors that would require it to be classified as a less stable material.

*Id.* Soil is also presumptively classified as Type C if it is "[s]ubmerged soil or soil from which water is freely seeping." *Id.* A "layered system" of soil is defined as "two or more distinctly different soil or rock types arranged in layers." *Id.* In a layered system, the soil is classified by its weakest layer, or "each layer may be classified individually where a more stable layer lies under a less stable layer." *Id.* § 1926, subpt. P, app. A(c)(4). For every excavation a competent person must classify the soil according to the definitions in Appendix A based on visual and manual tests. *Id.* § 1926, subpt. P, app. A(c)(1)-(2).

Based on the tests conducted by Morton and Kerkenbush, OSHA determined that the soil in the KS Energy trench was Type B, which corresponds to a maximum allowable slope of 45 degrees. *Id.* § 1926, subpt. P, app. B, tbl.B-1. This meant the trench was out of regulatory compliance based on Morton's slope measurements of 46, 50, and 46 degrees. Accordingly, OSHA issued KS Energy a citation for a repeat violation of § 1926.652(a)(1). KS Energy contested the citation and proceeded to trial before an ALJ. Based primarily on the testimony of its expert Harry Butler, KS Energy

argued that the soil in the bottom part of the trench should be classified as Type A, and therefore the trench slope was within the corresponding maximum allowable slope of 53 degrees. *See id.*

The ALJ upheld the citation, resting his decision on two alternative grounds. First, the ALJ concluded that the soil in the entire trench was properly classified as Type B soil, meaning that KS Energy violated § 1926.652(a) given Morton's slope measurements, which KS Energy did not dispute. Second, the ALJ accepted the Secretary of Labor's interpretation that § 1926.652(b) and Appendices A and B prohibit "benching" in "layered soils," an independent ground for the citation. The ALJ found KS Energy in violation of § 1926.652(a) and imposed a penalty of $12,500. Although the OSHRC initially directed review of the ALJ's determination, it later vacated that decision, making the ALJ's determination final. KS Energy timely filed a petition for review.

## II. Discussion

"The findings of the [Occupational Safety and Health Review] Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." 29 U.S.C. § 660(a). Where, as here, the OSHRC does not direct review of an ALJ's decision, the ALJ's findings become the Commission's, and the substantial-evidence standard "applies with undiminished force." *P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100, 104 n.3, 108 (1st Cir. 1997); *see also Union Tank Car Co. v. OSHA*, 192 F.3d 701, 704-

05 (7th Cir. 1999) (applying substantial-evidence standard where the OSHRC did not direct review of the ALJ's decision). "Substantial" in this context "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The agency must also "'build an accurate and logical bridge between the evidence and the result.'" *Chao v. Gunite Corp.*, 442 F.3d 550, 558 (7th Cir. 2006) (quoting *J.C. Penney Co. v. NLRB*, 123 F.3d 988, 995 (7th Cir. 1997)).

As we have noted, the ALJ upheld the citation on two separate grounds, the first based on the soil classification (and its effect on the allowable slope in the trench) and the second based on the agency's interpretation of the applicable regulations regarding benching in layered soils. On the first ground, KS Energy had agreed that if the entire excavation involved Type B soil, then the trench slope was too steep and in violation of OSHA regulations. KS Energy conceded that the soil in the upper part of the trench was Type B; the factual dispute before the ALJ thus centered on the proper classification of the soil in the lower portion of the excavation.

KS Energy argues that the only reliable evidence regarding the soil classification in the lower portion of the excavation came from its expert Harry Butler. Unlike Morton and Kerkenbush, Butler actually went into the trench, took soil samples, and measured the soil's compression strength. Butler therefore was the

only one who conducted soil tests in the lower part of the excavation, and he concluded that it contained Type A soil from a depth of 32 inches to the bottom of the trench.

The ALJ concluded, however, that any soil in the trench initially testing as Type A "should have been downgraded to at least Type B soil" based on several factors listed in the applicable regulations that affect soil-classification determinations. *See* 29 C.F.R. § 1926, subpt. P, app. A(b). More specifically, the ALJ found that "the soil in the excavation was subject to vibrations from traffic and [the use of a] backhoe, contained increasing amounts of water from an unknown source, and was previously disturbed at multiple locations in the trench." Substantial evidence supports at least two of these findings, either of which is enough to support the ALJ's decision.

### A. Soil Subject to Vibration

To repeat, OSHA regulations provide that no soil may be classified as Type A if it is "subject to vibration from heavy traffic, pile driving, or similar effects." *Id.* The ALJ found that notwithstanding the results of Butler's tests, the soil in the excavation could not be classified as Type A because it was subject to vibration. The sources of vibration, the ALJ found, included the "two lanes of heavy vehicular traffic running parallel to the excavation approximately twelve feet from the excavation edge" and "the operation of a large, tracked backhoe along the length and edge of the excavation."

KS Energy argues that Morton, Kerkenbush, and Butler did not report feeling any vibration in the trench during their inspections. But the relevant standard is whether the soil "is *subject to* vibration from heavy traffic, pile driving, or similar effects." *Id.* (emphasis added). Morton testified about the steady traffic on University Avenue on June 10, 2009, roughly 12 feet from the excavation. Kerkenbush described University Avenue as a "major throughway," and no one disputes this characterization. This evidence is enough to support the ALJ's finding that the soil in the trench was *subject to* vibration and therefore could not be classified as Type A. Evidence of *actual* vibration is not necessary.

With respect to the ALJ's reliance on the operation of a large tracked backhoe near the excavation, KS Energy argues that the use of heavy equipment near the excavation site cannot itself be sufficient to downgrade Type A soil to Type B because this kind of equipment is always used to dig construction trenches. Whatever force that argument has as a general matter, here the ALJ found that KS Energy was operating a large tracked backhoe along the length and near the edge of the trench, which *when combined with* the heavy traffic on University Avenue made the soil subject to destabilization due to vibration. We need not consider whether the use of the backhoe *alone* would satisfy the "subject to vibration" standard.

**B. Previously Disturbed Soil**

OSHA regulations also provide that no soil may be classified as Type A if it has been "previously disturbed." 29 C.F.R. § 1926, subpt. P, app. A(b). The ALJ applied this provision based on a finding that four previously installed utility lines ran perpendicular to the excavation in areas where KS Energy crews were working. KS Energy points out that the OSHA inspectors could not determine the precise extent of the previously disturbed soil. For example, Morton testified that she did not investigate and did not know where the disturbed soil around the utility lines began and ended. She did testify, however, that KS Energy's employees were working approximately eight to ten feet from at least one utility line. Kerkenbush testified that several areas around the utility lines contained previously disturbed soil but could only speculate as to how far that area extended. Butler testified that a utility pipe passing through the excavation was located well above the bottom bench of the trench (three to three-and-a-half feet below grade) and that only the soil immediately adjacent to the pipe had been previously disturbed.

KS Energy's argument boils down to a claim that the evidence did not establish *how much* of the soil was previously disturbed by the prior installation of other utilities. The substantial-evidence standard is not so exacting. That the evidence is not more precise on this point does not undermine the ALJ's decision; the ALJ was entitled to credit the inspectors' general testimony about the nearby utility lines. Moreover, the testimony

of OSHA supervisor Chad Greenwood corroborated the testimony of the inspectors; he explained that when installing utility lines, contractors typically "open up the trenches . . . so they have room to work." Finally, the ALJ heard testimony from KS Energy's safety director Joshua Retzleff about the water pipe at the east end of the trench, approximately three to four feet from the bottom, which places the previously disturbed soil within the bottom 52 to 70 inches of the trench, where Butler's testing found Type A soil. The cumulative effect of this testimony supports the ALJ's finding that the soil in the trench had been previously disturbed and therefore could not be classified as Type A.

## C. Water in the Trench

The ALJ also relied on the presence of "increasing amounts of water from an unknown source" to downgrade the soil type in the bottom of the trench. OSHA regulations classify "[s]ubmerged soil or soil from which water is freely seeping" as Type C soil. 29 C.F.R. § 1926, subpt. P, app. A(b). We question whether the evidence is sufficient on this factor. Although Morton observed some water accumulating in footprints at the bottom of the trench on June 10, 2009, she did not testify that there was "submerged" soil or "freely seeping water" in the trench. The presence of water in the footprints may have been enough to alert Morton, Kerkenbush, and Greenwood to investigate further, but it seems insuffi-cient without more to justify downgrading the soil classifi-cation based on "submerged soil or soil from which water is freely seeping."

In the end, whether the evidence supports the ALJ's decision on this point does not matter because substantial evidence supports his determination that the soil was at best Type B because it was subject to vibration and had been previously disturbed. As such, the trench exceeded the maximum allowable slope.

Because substantial evidence supports the ALJ's decision based on the soil classification alone—an independent basis for the citation—we need not address KS Energy's challenge to the ALJ's separate determination regarding the benching configuration in the trench. Accordingly, we do not reach KS Energy's argument that the agency's interpretation of the trenching regulations is unreasonable and unconstitutionally vague.

The petition for review is DENIED.